SAMUEL GREGSTEN *et al.*

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa, June 19, 1893.*

1. MUNICIPAL CORPORATIONS—*use of streets for private use.* It is the general doctrine that municipalities, under the power of exclusive control of their streets, may allow any use of them consistent with the public objects for which they may be held.

2. SAME—*contract—for use of vaults, etc., under streets and alleys.* A city under special legislative authority, as well as its general powers, may grant permits for and regulate the building of vaults under the streets, alleys and sidewalks, and require such compensation for the privilege as it may deem reasonable and just, when such permits relate solely to such use of the alleys, etc., as is in no wise inconsistent with their use by the public; and such permit when accepted and acted on by the holder by making costly improvements required, will constitute a contract between the city and such holder irrevocable at the mere will of the city.

3. SAME—*approval of permits to excavate under alley presumed by long user.* The approval by the city council of a permit of the board of public works, to one to construct a vault under an alley, may be inferred by the acts of the holder of such permit, in excavating the earth and making a costly vault, and the use and occupation of the same for about twenty years, without objection on the part of the city. Especially will this be so, when it is shown that the occupancy under the permit inured to the benefit of the city, which it received with knowledge of the right claimed by the occupant.

4. SAME—*consideration for grant of permit to excavate vault in alley.* A party, by a permit issued by city authorities, was granted the right to build, maintain and use a vault under an alley in connection with his building to be erected on the lot. He and his representatives were required to keep the alley forever in repair, and save and keep harmless the city from all loss or damages by reason of its ever being out of repair, and he was not to be charged with a tax as rent for the vault, in excess of that charged for similar vaults: *Held,* that the contract growing out of such permit, with the conditions attached thereto, was made upon a sufficient consideration securing rights mutually advantageous to the parties.

5. In such case where the permit has been granted upon the express conditions and stipulations to be kept and performed by the occupant, specified in a bond executed by him, the two instruments will constitute a contract, mutually binding upon the parties—not revocable by the city except for some one of the causes of revocation named in the contract itself.

6. SAME—*right of city to revoke permit to construct a vault under an alley.* A city granting a permit to one to make a vault under an alley, took from the licensee or party a bond, in and by which the city reserved the right to revoke the permit and re-enter, whenever the public interest should require it, and also upon the failure of the holder, his heirs, etc., to keep and perform the covenants and conditions of his bond: *Held,* that unless the public interest required the abandonment of the vault and the resumption of the alley by the city, or the holder of the permit had failed to perform his covenants, the city could not revoke such permit for the benefit and private use of some other individual who is sought to be invested with a similar permit.

7. SAME—*when may bind itself by contract.* A city, when acting in its private capacity, as contradistinguished from its governmental capacity, is bound by its contracts, and may be estopped by the conduct of its proper officers, when acting within the scope of their lawful power.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Circuit Court of Cook County; the Hon. M. F. TULEY, Judge, presiding.

This was a bill by appellants, in the Circuit Court of Cook county, representing that in 1870 appellant Gregsten was the owner of a leasehold interest in lot 16, block 142, school section addition to Chicago, expiring on the 1st day of April, 1880; that there was, on the 12th day of May, 1870, a building upon said lot, under the control of and

owned by Gregsten; that said lot fronts on Dearborn street in said city, and in its rear was a fifteen foot alley, dedicated to the public; that under the act of the legislature of 1863, amendatory of the charter of said city, power and authority were given to the board of public works of said city to authorize the use of space underneath the surface of alleys, etc., in said city, upon such terms and conditions as said board might determine, and require the taking of bond from the occupant to pay damages, etc., that might accrue by reason of such occupancy; that on the 12th day of May, 1870, Gregsten applied to the board of public works of said city for a permit to occupy all the space underneath the alley in the rear of said premises; that in pursuance of such application said board of public works issued a permit, which is set out in the amended bill, and required said Gregsten to give a bond in the penal sum of $10,000, to save and keep harmless, etc., the city, and to perform the covenants and conditions thereof. The permit, dated May 12, 1870, provides: "Permission and authority is hereby given by the board of public works of the city of Chicago to Samuel Gregsten, of said city, to excavate for and construct a vault under the alley running north and south through block 142," etc., "and in the rear of and adjoining lot 16 of said block, and maintain and use said vault in connection with the building erected, or to be erected, upon said lot 16," etc. "This permit being subject to all restrictions, limitations and conditions of a certain bond relative to said vault, of even date herewith, and executed by the said Samuel Gregsten, in favor of the city of Chicago, by order of the board of public works." A copy of the bond is attached to the bill and made part thereof, the conditions whereof, so far as necessary to an understanding of the questions presented, are as follows: "And the said Samuel Gregsten has bargained, covenanted and agreed to and with the said city of Chicago, and hereby for himself, his heirs, executors, administrators

and assigns, does bargain, covenant and agree to and with the said city of Chicago, that they will indemnify and save harmless the said city of Chicago and its officers, each and every one of them, from any and all loss, damage and expense whatever, for which it or they, or any of them, may become liable, or which may at any time be awarded or adjudged against said city or its officers, by reason of or in consequence of said excavation, or vault, or by reason of, or in consequence of any act or thing whatever by said Samuel Gregsten, or any of his agents, servants, contractors, or workmen, done, permitted, or suffered to be done in making, excavating, constructing, using, maintaining, opening, covering, closing, or doing any other act or thing in, upon or about said vault, or by reason of or in consequence of the failure of said Samuel Gregsten, or any of his successors, representatives, or assigns, to keep and perform all of his undertakings and agreements herein written; that said Samuel Gregsten will cause said vault to be strongly and firmly covered, and in any manner which may be directed by said board of public works, and will forever keep it so covered, so as in no manner to interfere with the use of said alley, or any portion thereof, as a public highway, and so as to make the same safe for persons, carriages, teams, and all animals and vehicles to pass and repass over and upon the same upon the established grade, and will forever after keep that part of the said alley so covered, and in good repair, and will grade, repair and renew the same when and as often as ordered by the common council of said city, or by the said board of public works, and will indemnify said city against any and all loss by reason of said alley so covered being out of repair; * * * * that he will construct approaches of easy slope to those parts of the alley so filled or covered by the said S. Gregsten; that in the management and use of said vault, he will be governed by and will conform to any ordinance which now exists, or which may hereafter be made

by said common council, or any rules which are now, or which may be hereafter adopted by the said board of public works, relative to similar vaults under alleys, provided always, however, that said Samuel Gregsten shall not be subject to any tax or assessment upon the same as rent beyond what shall be charged for similar vaults; that said vault, and those parts of said alley so occupied by said vault and its walls, shall be forever free and open for the building or laying, using, repairing and maintaining of all sewers, water pipes and gas-pipes ordered by said city, or by said board of public works, to be built, or laid, or used, or repaired, or maintained, so that such sewers, and gas or water-pipes, shall be within said vault, above or below the floor, or in any part of the space occupied by said vault or its walls, as shall be directed by said city, or by said board of public works, and that those parts of the said alley to be occupied by said vault and its walls shall be as free and open for the construction, or laying, or using, or repairing, or maintaining of such sewers, gas and water-pipes, and their fixtures and connections, as if the said vault and its walls had never been built."

The condition of the bond also provides for the entry of the city, or any officer, person or company in its behalf, for the purpose of constructing, repairing, etc., sewers, gas pipes, etc., at will.

The bill alleges that said Gregsten proceeded at once under said permit, and caused the alley space in rear of said lot to be excavated, walled and planked, at an expense of $2,000.00; that the fire of October, 1871, destroyed the building on the premises; that the same was immediately rebuilt, and the occupation of the alley space for the same purpose and under the same conditions, was continued with the knowledge of the authorities of the city; that on the 8th day of May, 1880, said Gregsten leased said lot 16 from the city of Chicago, for the term of 50 years, and that on the 15th day of June, 1888, he obtained another lease

therefor from said city, extending said term to the 8th day of May, 1985; that Gregsten has occupied and now occupies the alley space excavated, with his boilers and other necessary apparatus, used in conducting the hotel business carried on, on said lot 16 and in adjoining buildings; that he has no means of accommodating his building therewith if he should be deprived of said alley.

The bill then sets up in full an ordinance of the city, passed April 17, 1885, the first section of which provides that every alley space or court now open, or hereafter to be opened, in that portion of the south division of the city (giving boundaries, which includes the alley in question), "Whenever the same shall hereafter be ordered or permitted to be improved, either by order of the city council or by permission of the commissioner of public works, shall be granted to private individuals as hereinafter provided, shall be paved with granite block pavement, and constructed under the direction and supervision of the department of public works," etc. The second section provides, that whenever any person or persons shall desire to permanently improve such alley, etc., they shall prepare and deliver to the commissioner of public works, for his approval, plans and specifications, showing the desired improvement, etc., and if approved, authorizes permit under certain conditions. The 3d section provides that the commissioner of public works shall furnish the proper grades for all work done under this ordinance, and all improvements so made shall be done under the direction of said officer and as he shall direct, and in no other manner, etc.

The bill then alleges, that by virtue of said ordinance the commissioner of public works has assumed to grant to one McVicker a permit to occupy one-half of such alley space, thereby intending to deprive complainants of the use and benefit of such alley space, and denies the authority of such officer to grant such permit, and alleges that the

grant to said Gregsten, with the bond before mentioned, constituted between Gregsten and the city of Chicago a contract irrevocable, except as therein provided; that Gregsten has kept said alley in repair continuously, from May 17, 1870, at great expense; that he has performed and kept each and every of the covenants in said bond contained; that said permit granted the perpetual use of said alley space or vault, until the public interests should demand the use of the same; that the public interests have not, and do not, demand the use of said vault or space under the alley; and that the common council of the city of Chicago has never directed the complainants to remove or fill up said vault, or any part thereof.

The bill then alleges that the commissioner of public works, August 4, 1890, served upon complainants a notice to vacate said excavation or vault, and to remove all property therefrom; that this was done in order that the said McVicker might use, occupy and improve the east one-half of said alley, in pursuance of the ordinance of April 17, 1885, for which a permit had been issued to her; that the city of Chicago does not require said alley space for its use, but complainants are required to surrender possession of the same so as to give McVicker possession thereof for her private use. The prayer of the bill is for injunction, enjoining the city and its officers from bringing suits to recover possession of said one-half of said alley space, and from evicting complainants therefrom.

The answer of the city insists that the permit, if any, was issued to the complainant by the board of public works as alleged, was and is revocable by the board or other proper authority of said city and further, that if any such permit was granted to occupy underneath said alley, in whole or in part such permit was granted to said Gregsten, solely upon the condition that he would keep the surface of the alley in good repair and safe condition. It is then averred that he has not so kept the surface of said alley in repair,

but has permitted the same to become broken and unsafe; and that at the present time the surface thereof is broken through into the excavation made by said Gregsten, thereby causing dangerous pitfalls, etc., and that the surface covering is thin and weak, and that in consequence any horse or wagon passing over said alley is in peril of falling through into said excavation, wherefore he has forfeited any rights under said permit by reason of his permitting said alley to become out of repair, etc; that the work was done in and about said excavation in a cheap and careless manner, and that said alley, by reason, etc., is in a dangerous and unsafe condition; admits that city officials knew of occupation of Gregsten with boilers and other apparatus for the purpose of conducting the business as in the bill alleged, and denies that he has no other means to accommodate his building for the purposes for which this alley is used; admits the passage of the ordinance set up in the bill of April 17, 1885; admits the granting of permit to use one-half of such alley space to McVicker, as alleged in the bill, and avers that the permit so issued was confirmed by an order of the city council of the city, of date December 16, 1889, which is set out, and which provides that, "the commissioner of public works is hereby directed to render to Harriet G. McVicker all necessary assistance in making the improvement of said alley." Denies that the alley has been kept or is now in the repair as in the bill alleged. Admits the service of notice by the commissioner of public works to remove obstructions in the vault under the alley, and avers that such notice was served, because of the dangerous condition of the alley as it then existed, and that such notice was served with a view to the improvement of the alley, and for no other purpose. Admits, that under said notice it was intended for said McVicker to improve and occupy the east half of said alley, under said ordinance of April 17, 1885, for which she had received permit as aforesaid; and avers that the complainants could also have

availed themselves of the benefits of said ordinance of April 17, 1885, and further answering, admit "that they intend to permit the said Harriet G. McVicker to occupy and improve the east half of said alley, in accordance with her permit hereinbefore mentioned."

A preliminary injunction having been granted, the cause came on for hearing upon motion to dissolve. By agreement the motion was set down for hearing on the bill, answer and affidavits filed on such motion. The motion was sustained and the bill dismissed. On appeal to the Appellate Court, this decree was affirmed, and that court having granted a certificate of importance under the statute, this further appeal is prosecuted by the complainants.

Messrs. KNIGHT & BROWN, for the appellants:

The permit and bond constituted between Gregsten and the city a contract which could not be rescinded, except as provided in the contract. *Gridley* v. *Bloomington*, 68 Ill. 47; *Nelson* v. *Godfrey*, 12 id. 20.

Such permit may be inferred from long acquiescence on the part of the city. Dillon on Munic. Corp., sec. 554; *Fisher* v. *Thirkele*, 21 Mich. 1.

Of the control of municipalities over their streets and alleys. *Zinc Co.* v. *City of La Salle*, 117 Ill. 412; *City of Quincy* v. *Bull*, 106 id. 337; *Gas Company* v. *Town of Lake*, 130 id. 42.

As to estoppel of cities by acts of their officers. *Pendleton* v. *Amy*, 13 Wall. 297; *Hill* v. *Blackwelder*, 113 Ill. 292; *Lee* v. *Mound Station*, 118 id. 312; *Ball* v. *Agnew*, 15 Ill. App. 122; *Logan County* v. *City of Lincoln*, 81 Ill. 156; *Genoa* v. *Van Alstine*, 108 id. 558; *Roby* v. *Chicago*, 64 id. 447; *C., R. I. & P. R. R. Co.* v. *Joliet*, 79 id. 39.

Not only does the doctrine of estoppel apply here, but also that of ratification. *Connett* v. *Chicago*, 114 Ill. 233; *Bruce* v. *Dickey*, 116 id. 531.

460 GREGSTEN *et al. v.* CITY OF CHICAGO.

Brief for the Appellees.    Opinion of the Court.

Mr. JOHN S. MILLER and Messrs. CONDEE & ROSE, for the appellees:

The board of public works have the exclusive privilege to grant permits according to the ordinances of the city, and to regulate the building of vaults under the streets and alleys, and to require a reasonable compensation therefor, subject to the approval of the common council.

There is no evidence in the record, and no allegation, that the council ever approved Gregsten's permit.

In this court for the first time appellants urge the doctrines of estoppel and ratification. Neither the doctrines nor the cases cited apply to the facts of this case.

A court of equity has no jurisdiction. It is elementary that a court of chancery will not enjoin a trespass to realty, when money damages are adequate to the injury. High on Injunc. (3d Ed.) secs. 698, 699; *Hart, etc.,* v. *The Mayor, etc.,* 9 Wend. 571.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

By the amendment to the charter of the city of Chicago, passed in 1863, the board of public works was given the power "to regulate the placing or building of vaults under the streets, alleys and sidewalks, and require such compensation for the privilege as they shall deem reasonable and just, subject to the approval of the common council." Under the authority thus conferred, as well as in execution of the power of exclusive control over the streets and alleys of the city by the city authorities, the board of public works executed a permit to appellant, Gregsten, to excavate for and construct a vault under the alley running north and south through block 142, school section addition to said city, in the rear of and adjoining lot 16 in said block, and to maintain and use such vault "in connection with the building erected, or to be erected, upon said lot," etc. As will be seen from the foregoing statement, said permit is, by its terms, subject to all the restrictions, limitations and

conditions of the bond of said Gregsten, of even date, executed to the city.

The question sharply presented in this record is, whether the permit, construed in connection with the bond, so far as it relates to matters not affecting the public use of the alley, constitutes a contract, irrevocable by the city at will. "It is the general doctrine that municipalities, under the power of exclusive control of their streets, may allow any use of them consistent with the public objects for which they are held." *Nelson* v. *Godfrey*, 12 Ill. 20; *City of Quincy* v. *Bull*, 106 *id.* 337; *Gridley* v. *Bloomington*, 68 *id.* 47; *C. & N. W. Ry. Co.* v. *Elgin*, 91 *id.* 251; *Chicago Mun. Gas L. Co.* v. *Town of Lake*, 130 *id.* 42; Dillon on Mun. Corp., 541–551.

In this case, however, special power had been conferred, by the act amendatory of the charter, to make the grant, upon such consideration as the city authorities might deem reasonable and just. (Sec. 12, act 1863.) Upon looking into the bond, it is seen that appellant was required, as part consideration for the grant, to so construct his vault and cover the same that the alley should, at the grade established by the city, be at all times open, and in safe repair and condition for the passage over it of all persons, animals and vehicles. Beneath the surface, the city reserved the right of entry, at all times, for all purposes affecting the public interest. The water, gas and sewer pipes, etc., of the city, might be constructed, enlarged and repaired, at all times, through and under said vault and the walls thereof, in the discretion of the city authorities. The permit, it is apparent, relates solely to such use of the alley as was in no wise inconsistent with its full enjoyment for all public uses and purposes. Moreover, as will be seen, it is expressly stipulated, that whenever the public interests shall demand it, the rights under the permit shall cease. The city, through its constituted authorities, in granting the permit upon the covenants, conditions and

limitations contained in the bond taken by the city from Gregsten, was, therefore, acting in its private corporate capacity, as distinguished from its public and political, or governmental capacity, and the doctrine applicable to the exercise of its public political powers does not apply. *Bailey* v. *Mayor, etc., of N. Y.*, 3 Hill, 539; *De Voss* v. *City of Richmond*, 18 Gratt. 338; *Quincy* v. *Bull, supra.* The public, except in so far as it might be benefited, had no interest in the subject matter of the grant.

It is insisted, however, that the permit was void, because no approval thereof by the city council is shown. It is alleged and proved, that upon receiving the permit Gregsten excavated the vault, built and covered it, as required by the condition of his bond, at large expense to himself. That he entered into occupancy of it, placing therein boilers and apparatus, using it as appurtenant to his building located on said lot sixteen. That the building having been destroyed by the great fire of October, 1871, he rebuilt upon said lot, and again putting said alley-way in like condition as before, maintained the vault, as an appurtenance to his said building, to the filing of this bill, a period of practically twenty years. During all that time, with knowledge of the construction and use of the vault by the city authorities, as admitted in the answer, he kept the alley in repair; and, for this time, the city was saved all expense of the maintenance and repair of the surface of the alley, in the rear of and abutting said lot sixteen.

In *Gridley* v. *Bloomington, supra,* we said: "Although no license from the city to make the vault is shown, on the other hand no objection by the city is shown either to the making of the vault, the mode of its construction, or the state of repair in which it has been kept; and situated as it is under the sidewalk, in a public street, and for so great a length of time, we can not presume that those having charge of the streets were ignorant of its existence, or of the respective rights and duties of the city, and the

owners of the property in relation to it. We regard this acquiescence as a sufficient recognition by the city of authority to construct and maintain the vault in a prudent and careful manner." So, in the previous case of *Nelson* v. *Godfrey, supra,* it is held that, as the privilege of excavating under sidewalks, etc., for vaults is of great convenience, and may with proper care be exercised with little or no inconvenience to the public, authority to make the same will be inferred in the absence of any action of the corporate authorities to the contrary, they having knowledge of the progress of the work. See, also, Dillon on Mun. Corp., sec. 554. So, in this case, the approval of the city council may be inferred from its long acquiescence in the use of the alley, for the purpose for which the permit was granted. And especially will this be so, when it is shown, as it is here, that the occupancy under the permit inured to the benefit of the city, which it received with knowledge of the right claimed by complainant.

As we have seen, the city authorities were authorized to regulate the placing of vaults under sidewalks, streets and alleys of the city, and require compensation for the same. A reference to the condition of the bond will show, that the consideration fixed and agreed upon between Gregsten and the city was, that he should bring the alley to the grade established by the city make approaches of easy slope thereto, covering the vault, so as to render it safe and secure as a way for public use and travel, and to forever keep and maintain said alley in such condition and repair. The said Gregsten was required to covenant for himself, his heirs, executors, administrators and assigns, to forever keep and maintain said alley in said condition, and to renew and repair the same whenever required so to do by the city authorities. By the express terms of the permit he is granted the right to build, maintain and use the vault in connection with his buildings erected, or to be erected, on said lot sixteen. It seems clear, that the parties

had in contemplation, at the time of entering into the arrangement, that Gregsten, his heirs and assigns, should have the right to build and maintain a vault under said alley, as appurtenant to the building upon lot sixteen, and be bound to maintain the same in suitable repair and condition for the public use and convenience perpetually, unless the public convenience or necessity required the removal of the vault from the alley. He and his representatives are required to forever keep and maintain said alley in repair, and to save and keep harmless the city from all loss or damage by reason of its, at any time, being out of repair. It was also in contemplation of the parties that, in addition to the liability of the grantee in the permit, his heirs and assigns, to keep said alley in repair, and thereby save the city the cost and expense of paving, maintaining and repairing the same, and from all loss by reason of its being out of repair, he or they might be subject to a further tax as rent, as the city in the exercise of reasonable discretion might determine. It is expressly stipulated in the bond, "that said Samuel Gregsten shall not be subject to any tax upon the same" (the vault) "as rent, beyond what shall be charged for similar vaults." The objection, therefore, that the contract was without consideration, is without merit. By the arrangement thus made the municipality in its private corporate capacity made the grant upon a sufficient consideration, securing rights mutually advantageous to the parties, and in no wise conflicting with or infringing upon any public interest. And the permit having been granted upon the express conditions and stipulations to be kept and performed by Gregsten, the two instruments constituted a contract mutually binding upon the parties. 15 Am. & Eng. Enc. of L. 1106, note 3. The city, when acting in its private capacity, as contra-distinguished from its governmental capacity, is bound by its contracts, and may be estopped by the conduct of its proper officers when acting within the scope of their lawful power. *C., R. I. & P. R. R. Co. v.*

*Joliet*, 79 Ill. 39; *Logan Co.* v. *Lincoln*, 81 id. 156; *Martel* v. *E. St. Louis*, 94 id. 67; *Chicago* v. *Sexton*, 115 id. 230.

We are of opinion that the permit and bond, forming parts of the same transaction, constituted a contract between the parties, not revocable by the city, unless the public interest or convenience demanded it, or for some other cause for which the contract, by its terms, might be revoked. By the terms of the bond the city reserved the right to revoke the permit and re-enter whenever the public interest should require it, and also, upon the failure of Gregsten, his heirs, executors or assigns, to keep and perform the covenants and conditions in the condition of his bond mentioned, and upon the termination of the permit, it was stipulated that Gregsten should remove and fill up the vault, thereby restoring the alley to its former condition. It is not pretended that the interests of the public demand, or its convenience requires, the removal by Gregsten from the vault, or its abandonment, and a resumption by the city of absolute control over the alley. We have already seen, that for all public purposes the municipal authorities had and retained under the contract absolute control of the same. In addition, by reference to the conditions of the bond, it will be seen that Gregsten, his representatives and assigns, were bound to renew and repair the surface of the alley whenever and in such manner as should be ordered by the city council or board of public works of the city. It is admitted in the answer, and if it were not it is abundantly shown, that the attempt to oust the present occupants of the vault is not demanded in the public interest, or to serve a public purpose, but is solely to enable the abutting owner, upon the east of the alley, to occupy one-half of the alley space in the rear of said lot sixteen for private uses. The answer admits that a permit had been given to one McVicker, to occupy and improve the east half of that part of said alley abutting on com-

30—145 ILL.

plainants' lot, and that it is the intent and purpose to put said McVicker in possession of such right under said permit. No such right is reserved in and by the contract, and such purpose is, therefore, unlawful. The city is without power to deprive the complainants of their rights, under its contract with Gregsten, for the benefit of private individuals, or to subserve private purposes and ends.

The bill alleges, and the proof sustains the allegation, as we think, that the grantee in the permit put the surface of the alley in the condition required by the contract, and kept and maintained the same in safe repair and condition for the passage and travel over and across the same of all persons, animals and vehicles, as required in and by his bond. It is true, the answer sets up that the surface of said alley over said vault had been permitted to become out of repair, and was in a dangerous condition, etc., and that there was, therefore, a right of revocation of the permit under the terms of the contract. There is some evidence tending to show that the surface was depressed in the middle of the alley, and that some boards were broken. That the alley over the vault was in a dangerous condition, or unsafe or insecure for the passage of all persons or vehicles, is clearly rebutted. The beams holding the covering were of oak and sound, on which there was first laid three-inch plank and on top of these a layer of two-inch plank, which had been renewed practically within two years. Up to the filing of this bill it would seem that no complaint had been made, knowledge of which was carried home to complainants at least, that the surface of the alley was in any wise out of repair. Mr. Hirsch, of the engineering department of the city, upon his examination of it shortly before the service of notice upon complainants to remove from the vault, is shown to have pronounced it safe, etc. We are not unmindful that the commissioner of public works says, in effect, that he gave the notice, and was proceeding against complainants because the surface of the alley was in a danger-

ous condition. Without criticism of this statement, it may be said that it is abundantly shown that such was not its condition, and that as early as December, 1889, without any complaint that the alley was out of repair, and without any notice to complainants, a permit to occupy the east half of the alley, then in possession of the complainants, was given to Mc-Vicker. There is not a scintilla of evidence tending to show that the alley was then in any way out of repair; and the avowed purpose of the city and commissioner of public works in their answers is, as we have seen, to permit McVicker to occupy under the permit to her. Moreover, it appears, and is not controverted, that immediately upon receiving notice that it was claimed that the alley was out of repair, etc., and being the first notice complainants had of any intention on the part of the city, or its officers, to require them to give up the alley, or any part of it, complainants went to the commissioner of public works and demanded of him, that if he claimed said alley was not properly planked or paved, that he give them specifications, showing in what manner and in what material it was required they should plank or pave the same; and then offered, if the commissioner required it, "to put iron beams across said alley space, and to place over the same concrete, stone blocks, wood blocks, or any other kind of pavement said commissioner might require;" and practically the same offer is made in and by complainants' bill.

By an ordinance of the city, passed April 17, 1885, in reference to the improvement of alleys in the district of the the city in which this alley is located, it is (sec. 3) provided that: "The commissioner of public works shall furnish the proper grades for all work done under this ordinance, and all improvements so made shall be done under the direction of said officer and as he shall direct, and in no other manner." It is shown that the commissioner, although repeatedly requested so to do, declined to give complainants any direction whatever in respect of the manner

in which the alley should be repaired or improved, or to direct them in respect thereof. If the alley was out of repair, and the public interest alone was to be considered, every duty to the public would have been subserved by the performance of the duty required by said ordinance of said commissioner. It is clear, from this record, that the complainants were not only ready, able and willing, but offered to put the surface of said alley in such condition and repair, and use such material, as said commissioner might require. It is impossible to consider this record, as it seems to us, and not find that the decided preponderance of the evidence is against the contention, not only that the surface of the alley was out of repair, but also that the proceedings against the complainants were instituted for that reason. It is true that there is, and must necessarily be, vested in city authorities a large discretion to determine when the public streets and alleys of the city are in suitable repair to insure safety to the public. If the commissioner of public works had condemned the covering to the vault and required its renewal, or had deemed it necessary for the public convenience or safety that the vault should be more securely covered, or differently paved, and complainants had neglected or refused to keep their covenant, and repair or renew, a different question would have been presented by the record, which it is unnecessary for us here to discuss or determine.

We are of opinion that the court erred in sustaining the motion to dissolve the injunction and in dismissing the bill. The decree, and the judgment of the Appellate Court affirming the same, is reversed and the cause remanded to the Circuit Court for further proceeding not inconsistent with this opinion.                                    *Judgment reversed.*