THE TACOMA SAFETY DEPOSIT COMPANY, Appellant, *vs.*
THE CITY OF CHICAGO, Appellee.

*Opinion filed October 28, 1910—Rehearing denied Dec. 9, 1910.*

1. PLATS—*fee of streets in original town of Chicago is in the
city.* The fee of LaSalle street in the original town of Chicago,
as platted by the canal commissioners, is in the city of Chicago and
not in the owners of abutting property. (*City of Chicago v. Rum-
sey*, 87 Ill. 348, followed.)

2. EASEMENTS—*owner of land may use it in any way not in-
consistent with an easement.* The owner of land which is subject
only to a public or private easement has a right to use his property
for any purpose he may deem proper, so long as it does not inter-
fere with the proper enjoyment of the easement.

3. MUNICIPAL CORPORATIONS—*rights of city in streets in which
the abutting owners own the fee.* Where the owners of abutting
lots own the fee in the streets the city may use such streets for
all purposes to which a street may be put without the consent of
the abutting owners, but it cannot divert the use of such streets to
other purposes without such consent.

4. SAME—*power of city to control sub-sidewalk space.* If the
fee of the street is in the city the city has power to authorize the
use of the sub-sidewalk space by the owner of abutting property
and may require him to pay compensation, provided the proper use
of the street is not interfered with and subject to the right of the
city to require the surrender of the space if needed for public pur-
poses; but if the fee of the street is in the abutting owner the city
cannot prevent his use of the sub-sidewalk space if it does not af-
fect the use of the street, nor compel him to pay rent therefor.

5. SAME—*city does not acquire fee by condemnation proceed-
ing.* Where a city, for the purpose of widening a street, condemns
a strip of land off of the abutting lots the city does not acquire the
fee but the fee remains in the abutting owners, subject only to the
public use for which the land was condemned.

6. SAME—*approval of building plans, including sub-sidewalk
space, does not work estoppel.* Where the fee of the street is in
the city, the fact that the building department of the city approves
an abutting owner's building plans, which include the use of sub-
sidewalk space, amounts merely to a license to use such space, and
does not estop the city from subsequently demanding the removal
of the sub-sidewalk structures or the payment of compensation to
the city for the use of the space.

DUNN, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

WILSON, MOORE & McILVAINE, for appellant.

EDWARD J. BRUNDAGE, Corporation Counsel, and WILLIAM D. BARGE, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by the Tacoma Safety Deposit Company, a corporation, against the city of Chicago, in the circuit court of Cook county, to enjoin the city from enforcing against the complainant the provisions of an ordinance passed by the common council of said city on February 5, 1906, which provides no person shall use any space underneath the surface of any street or other public grounds in the city of Chicago, or construct or maintain any structure thereunder, without first obtaining a permit so to do from the commissioner of public works of the city. An answer and replication were filed and the case was tried by the court. The premises of the complainant are situated at the north-east corner of LaSalle and Madison streets, and have a frontage of eighty feet on LaSalle street and one hundred and one feet on Madison street. A decree was entered by the court dismissing the bill as to the LaSalle street frontage and enjoining the city from enforcing the ordinance as against the Madison street frontage, and each party has prosecuted an appeal.

The premises of complainant have located thereon a building thirteen stories high, which is constructed of stone and brick, with interior steel columns and cross-beams. The ground floor of the building is used for stores and its remaining stories are used for offices. It is heated by steam from a plant located in the basement, and in connection with the building the complainant is using the space

247 — 13

located beneath the adjoining sidewalks upon LaSalle and Madison streets.

The parts of the ordinance material to this controversy read as follows:

"Sec. 1. No person shall use any space underneath the surface of any street or other public ground in this city, or construct or maintain any structure thereunder, without first obtaining a permit so to do from the commissioner of public works of the city.

"Sec. 3. Every applicant for such a permit shall file with his application his bond in the penal sum of $10,000, with surety or sureties to be approved by said commissioner of public works; and such bond shall be conditioned that the person to whom such bond shall be issued, his' heirs, successors or assigns, will save and keep the city free and harmless from any and all loss or damage, or claim of damage, arising from or out of the use of the space or structure therein mentioned, and for the maintenance of · the street, alley or other public way, or the sidewalk over such space, as the case may be, * * * and for the prompt and full payment of the compensation hereunder required during his ownership of said property so long as said permit shall be outstanding.

"Sec. 4. When the space so used does not extend more than fifteen feet below the surface of the street, alley, way or ground over the same, the person, firm or corporation making, using or maintaining any such structure, or using space underneath the surface of any street, alley, public way or public ground, shall render to the city, as the annual compensation for such use, whenever the adjoining property is subject to general taxation, a sum equal to four per cent of the amount determined by multiplying the number of square feet of surface over the space so used by a sum equal to one-tenth of the land value of the average square foot in the lot abutting on such space, as fixed by the last assessment thereof for general taxation by the

State or county authorities:  *  *  *  *Provided, however,* that in every case the annual compensation shall be at least $10.

"Sec. 6. If any person now using any space underneath any street, public alley, sidewalk or public way shall fail to take out a permit for such use, as herein provided, within ninety days after this ordinance is in effect, then the commissioner of public works shall proceed to remove every such structure and close the space therein.

"Sec. 11. Nothing in this ordinance contained shall be held or construed to apply to any person now using any such space underneath the surface of any street or other public ground according to the terms of any ordinance heretofore passed which requires the payment of compensation for such use if such person is making such payments, nor so long as such payments are made according to the terms of such ordinance."

LaSalle street was one of the streets in the original plat of the original town of Chicago. Madison street, as the lots were originally platted, lay wholly within School Section addition to Chicago, but was afterwards widened by condemning twenty-five feet from the lots now owned by complainant, and the sub-sidewalk area occupied by the complainant upon Madison street, adjacent to its building, all falls within the twenty-five feet condemned. The complainaint claims to be the owner of the fee in LaSalle street to the center of the street and to be the owner of the fee in the north twenty-five feet of Madison street adjoining its premises. The trial court overruled complainant's contention as to LaSalle street and sustained its contention as to Madison street.

We think the controlling question in this case is, where rests the fee to the portion of the streets adjoining complainant's property which it is now occupying as subways and which lies beneath the sidewalks upon the west and south of its premises? As different principles, in part,

control the decision of where rests the title to the subway beneath the sidewalk on LaSalle street from what govern the decision of the question where rests the title to the subway beneath the sidewalk on Madison street, we will consider those questions separately.

LaSalle street, at the point where appellant's property is situated, is located in the original town of Chicago, and in the case of *City of Chicago* v. *Rumsey,* 87 Ill. 348, (which holding was approved in *Davenport Bridge Railway Co.* v. *Johnson,* 188 Ill. 472, and in *People* v. *Chicago and Northwestern Railway Co.* 239 id. 42,) it was held that the fee to the streets in the original town of Chicago rested in the city of Chicago. The doctrine of the *Rumsey case* has been fully considered in an opinion filed at this term in the case of *Ryerson* v. *City of Chicago,* (*ante,* p. 185,) and the doctrine announced in the *Rumsey case* limited to plats made by the canal commissioners. It is not, therefore, necessary to discuss the *Rumsey case* here. Suffice it to say that the fee to LaSalle street, upon which appellant's property abuts, is in the city of Chicago and not in the appellant. The fee to LaSalle street adjoining appellant's property being in the city of Chicago, the bill of appellant was properly dismissed.

We think that the law is well settled that the owner of real estate, subject only to a public or private easement, has the right to use his property for any purpose which he may deem proper, so long as the use to which it is put does not interfere with the proper enjoyment of the easement which is held by the public or by a private person therein. Mr. Kent, in his Commentaries, (vol. 3, 12th ed. p. 433,) says: "The freehold and all profits belong to the owners of the adjoining lands. They may * * * have every use and remedy that is consistent with the servitude or easement of a way over it, and with police regulations." In *Perley* v. *Chandler,* 6 Mass. 454, in passing upon the rights of the owner of the fee of a highway, it was said:

"The soil and freehold remain in the owner although encumbered with a way, and every use to which the land may be applied and all the profits which may be derived from it, consistently with the continuance of the easement, the owner can lawfully claim." In *Tucker* v. *Tower,* 26 Mass. 108, it was said: "It is too clear to require any discussion that the proprietor of land over which a public highway has been laid, retains his right in the soil for all purposes which are consistent with the full enjoyment of the easement acquired by the public or by any corporation by authority derived constitutionally from the legislature." And in *Colgrove Water Co.* v. *City of Hollywood,* 90 Pac. Rep. 1053, the Supreme Court of California said: "One who grants to the public the right to use a strip of land as a highway, retaining in himself the ownership of the soil, parts with an easement, merely. The owner of property subject to an easement may use his property in any manner and for any purpose not inconsistent with the full and free enjoyment of the easement. (*Hoyt* v. *Hart,* [Cal. Sup.] 87 Pac. Rep. 569.) This rule applies to land devoted to use as a public road or street, as well as to land subject to a private use only."

The south twenty-five feet of complainant's lots was condemned for the purpose of widening Madison street, and the question must now be determined whether or not the city by that proceeding acquired the fee in the north twenty-five feet of Madison street upon which the property of complainant abuts. This property was condemned in 1851, and at that time there was no statute in force in this State expressly authorizing a city to take the fee of real estate for street purposes, and we think the law is clear that before the city could acquire the fee to said real estate for street purposes it must appear there was a statute in force which, by its terms or by necessary implication, authorized the city to take said property in fee, for the purpose of widening said street.

In *Illinois Central Railroad Co.* v. *City of Chicago,* 138 Ill. 453, at page 458, this court said: "The taking of property under the right of eminent domain is in derogation of individual right, and therefore, the grant is to be strictly construed. (*Chicago and Eastern Illinois Railroad Co.* v. *Wiltse,* 116 Ill. 456; *Reed* v. *Ohio and Mississippi Railway Co.* 126 id. 48; Cooley on Const. Lim. 530, 531.) It would seem, therefore, to follow that the grant of power must be express, or arise by necessary implication from the language of the grant." This statement of the law is in harmony with all the text writers and adjudicated cases, so far as we have been able to discover.

In Elliott on Roads and Streets the doctrine is thus stated (sec. 225): "Unless the purpose for which the taking of the land is authorized is in itself such as requires that a fee should be seized or the statute plainly authorizes that such an estate may be seized, then no more than an easement can be appropriated. This conclusion is founded on sound reason and receives full support from the adjudged cases." The same author, in section 227, says: "The general rule, as we have said, is, that statutes conferring authority to compel an owner to yield his property to the public demand are to be strictly construed, and this rule governs as to the extent of the estate which may be seized. Thus, a statute conferring authority to lay out a road imports that an easement, only, can be appropriated. So a statute providing that the corporation shall be seized and possessed does not authorize the seizure of the fee. Authority to take for an avenue does not confer a right to take a fee but it does confer a right to acquire a perpetual easement. The principle to be deduced from all the decisions may be thus stated: Where the language of the statute will bear a construction which will leave the fee in the land owner, that construction will be preferred rather than one which will wrest the fee from him."

Judge Cooley, in his work on Constitutional Limitations, (7th ed. p. 808,) said: "As a general rule, the laws for the exercise of the right of eminent domain do not assume to go further than to appropriate the use, and the title in fee still remains in the original owner. In the common highways the public have a perpetual easement, but the soil is the property of the adjacent owner, and he may make any use of it which does not interfere with the public right of passage, and the public can use it only for the purposes usual with such ways." And on page 810: "In any case, however, an easement, only, would be taken, unless the statute plainly contemplated and provided for the appropriation of a larger interest."

Mr. Lewis, in his work on Eminent Domain, (sec. 449,) says: "Upon the principle that statutes conferring compulsory powers are to be strictly construed, it follows that where the estate taken is not defined, only such an estate or interest will vest as is necessary to accomplish the purpose in view, and where an easement is sufficient no greater estate can be taken. Thus, under authority to take land for a highway, railroad or other like use, only an easement can be acquired for no greater estate is necessary."

In *Illinois State Trust Co.* v. *St. Louis, Iron Mountain and Southern Railway Co.* 208 Ill. 419, on page 422, this court said: "The power of eminent domain is an incident to sovereignty and inherent in the State, and can be exercised only on the occasion, in the mode and by the agency prescribed by the legislature. * * * The power to take the property of the individual without his consent is against common right, and all acts authorizing such a taking are to be strictly construed. * * * Unless both the letter and the spirit of the statute relied upon clearly confer the power it cannot be exercised."

We are of the opinion, in view of what has been said by the text writers and held by the adjudicated cases, it must be held that the city of Chicago, by the condemnation

proceeding whereby it sought to take property for the purpose of widening Madison street, did not acquire a fee, but that the fee in the north twenty-five feet of Madison street adjoining the property of the complainant is in the complainant.

It is contended by the defendant that the city, regardless of where the fee in the streets adjoining complainant's property is held to rest, under the power of the city to control its streets, had the right to pass the ordinance hereinbefore referred to and to enforce the same as against the complainant. The right of the city to control its streets cannot be doubted so long as it uses its streets for the purpose for which they have been dedicated. If, however, the city authorizes the use of its streets for a purpose other than that for which they have been dedicated it exceeds its power, and the decisions of this court clearly establish that there is a distinction between the interests of the abutter on a street in which the fee rests in the city and on a street in which the fee rests in the adjoining owner. To illustrate: An abutter under a statutory dedication cannot enjoin a steam railroad company from using the street, while an abutter under a common law dedication and in whom rests the fee of the street may enjoin such use, even though a franchise has been granted by the public authorities to the railroad company. In a case where the fee is in the city it would not be an unlawful diversion of the use of a street to permit a vault or other similar underground structure to be erected beneath the street, which structure did not interfere with the purposes for which the street was dedicated, and the city would not be estopped from requiring the space occupied by such structure to be surrendered to the city whenever it became necessary to remove the structure for the uses of the public. (*Gregsten* v. *City of Chicago,* 145 Ill. 451; *City of Chicago* v. *Norton Milling Co.* 196 id. 580.) To permit, however, such a structure to be erected in a street where the fee of

the street rests in the abutting owner, and to require the abutting owner to pay rent for the use of such space, would be to impose an additional burden or servitude upon the fee and would be unlawful. It is clear, therefore, to provide for the erection of a subway beneath the sidewalk and in a street adjoining the property of the abutter where the fee in the street is in the abutter, and to require the owner of the fee to pay rent to the city for the use of his own propery, would be, in effect, to take from the owner his property without due process of law or without paying him due compensation therefor, under the claim of regulating the use of the streets of the city, which would amount to an unlawful deprivation of the abutter's property, which the law would not permit.

The contention is made by the complainant that the city is without power to pass an ordinance requiring persons who use subways beneath sidewalks adjoining their property to pay compensation for the use of such space. The position of the complainant, we think, is well founded as to subways beneath sidewalks in streets of which such persons are the owners in fee, but as to subways beneath sidewalks in streets in which the fee is in the city or in the State, and which are held for the use of the city, we do not think this is true. In the *Gregsten case* and in the *Norton Milling Co. case* the right of the city of Chicago to confer, by contract, upon a private individual or corporation the right to use space beneath the public streets of the city was recognized. If the city has the power to contract for the use of space beneath the public streets of the city, we see no reason why it cannot provide for such use and regulate the manner of such use and the compensation that shall be paid for such use, by ordinance, in those streets in which it holds the fee, subject at all times to the right to reclaim the portion of the street then in use when the necessities of the public may require. In the *Gregsten case* it was held a city, under special legislative

authority as well as its general powers, may grant permits for and regulate the building of vaults under the streets, alleys and sidewalks and require such compensation for the privilege as it may deem reasonable and just, when such permits relate solely to such use of the alleys, etc., as is in nowise inconsistent with their use by the public. And in the *Norton Milling Co. case* it was held a city has power, in connection with the widening of a river and the building of a new bridge, to acquire an easement consisting of the right to swing the bridge over ground owned by the milling company, and may agree, in consideration of such easement, which will necessitate the removal of the milling company's boiler rooms, to excavate a vault under a street for its use as a boiler room, rent free, and to rebuild the milling company's dock upon the new line of the river bank and indemnify the company against damages from the city's tortious acts. We think, as applied to a case where the fee of the street is in the city, these cases are controlling.

It is also urged that the city, having granted to the complainant a permit to construct its building upon its premises according to plans and specifications which provided for the construction of subways beneath the sidewalks adjoining its premises, is now estopped to deny the right of the complainant to maintain said subways upon the property of the city free of charge. It is too clear for argument, we think, that the city had the right to regulate the construction of complainant's building at the time it was erected, and the fact that it may, through its building department, have approved certain building plans which were submitted to it by the complainant and granted to it a permit to construct its building, we think obviously did not estop the city afterwards to require the complainant to pay for the use of the city's property which its building in part occupied, or to remove its building, or the part thereof which rested upon the city's property. The

complainant, at most, we think, obtained a license to construct a subway beneath the sidewalk of the city adjoining its building, which license could be revoked by the city in case the complainant refused to comply with the ordinance which required it to pay to the city compensation for the use of the space beneath the sidewalk in the street which belonged to the city. We do not think the cases of *Gridley* v. *City of Bloomington*, 68 Ill. 47, *Gregsten* v. *City of Chicago, supra,* and *City of Chicago* v. *Norton Milling Co. supra,* are in conflict with this view. In each of those cases contractual relations were held to exist between the parties which were binding upon them, while in this case the most that can be claimed by the complainant is that it was granted a permit by the city to erect its building. At the time it took out this permit it had full knowledge of all the facts and obviously was not misled by the city. The doctrine of estoppel, we think, has no application to the case at bar.

It is finally urged the ordinance is unreasonable and discriminatory. We are unable to see that the ordinance is subject to attack for those reasons, but are of the opinion the criticisms made upon the ordinance in those particulars are hypercritical.

From a careful consideration of this record we have reached the conclusion that the trial court did not err in dismissing the bill as to the LaSalle street frontage and in enjoining the city from enforcing the ordinance as against the Madison street frontage upon which the complainant's property abuts.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

Mr. JUSTICE DUNN, dissenting.