R. P. ANDREWS PAPER CO. v. DISTRICT OF COLUMBIA.*

(Court of Appeals of District of Columbia. Submitted December 2, 1919.
Decided March 1, 1920.)

No. 3267.

1. DISTRICT OF COLUMBIA ⬦⟹22—OCCUPANCY OF SPACE UNDER SIDEWALK UNDER PERMIT SUBJECT TO POLICE REGULATIONS.

Occupancy by an abutting owner of space under a street in the District of Columbia, under a permit, is subject to all reasonable police regulations, and if the space occupied is required by the public, the abutting owner's interest instantly must yield to that of the public.

2. DISTRICT OF COLUMBIA ⬦⟹22—ACT AUTHORIZING COMMISSIONERS TO COLLECT RENTAL FOR OCCUPANCY OF SPACE UNDER STREET PROSPECTIVE ONLY.

Act Sept. 1, 1916, § 7, authorizing the commissioners of the District of Columbia to collect rent from users of space under streets, was not intended to affect vested interests, or rights under permits previously issued pursuant to building regulations, providing that no charge would be made for use of the space, and applies only to permits issued thereafter.

Smyth, Chief Justice, dissenting.

Appeal from Supreme Court of the District of Columbia.

Action by the District of Columbia against the R. P. Andrews Paper Company. Judgment for the District of Columbia, and defendant appeals. Reversed and remanded.

M. D. Rosenberg and E. Hilton Jackson, both of Washington, D. C., for appellant.

C. H. Syme, Corp. Counsel, and F. H. Stephens, Asst. Corp. Counsel, both of Washington, D. C., for the District of Columbia.

ROBB, Associate Justice. This is an appeal from a judgment for the appellee, plaintiff below, in an action to recover rent for space under the sidewalk adjacent to appellant's store building in this city.

The facts, as agreed upon by the parties, are substantially as follows: On October 17, 1791, there was promulgated, under the direction of President Washington, a building regulation providing that no vaults should be permitted under the streets without the consent of the commissioners, and thereafter such permission was sought and obtained under regulations requiring the payment of what in effect was a permit fee by the applicant, but no other charge was prescribed. As early as 1897 the regulations specifically provided that no charge would be made for the occupancy of such public space under sidewalks, "except the usual permit fee." On July 27, 1912, when the permit to construct the vault occupied by appellant was issued to appellant's lessor, the building regulations contained the following provisions:

"No charge will be made for the occupancy of public space by vaults or areas, except the usual permit fee, and all permits for such occupancy are subject to revocation by the commissioners at any time without compensation when the vault space is needed for public use or improvements."

This paragraph became section 123e in the Revised Building Regulations of 1913, and was headed "No Charge for Occupation of Space."

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari granted 252 U. S. —, 40 Sup. Ct. 481, 64 L. Ed. —.

The regulations further in effect provided that, upon notice from the commissioners of the District that the vault space was required for certain specified public purposes, the owners would vacate so much of such space as in the judgment of the commissioners should be necessary. The regulations further provided that the form of the agreement to be signed by the applicant should contain the following:

"And this permit is accepted with the understanding that the occupation of the vault space is permitted merely as an accommodation to the owner of the abutting premises, and that no right, title or interest of the public is in any way waived or abridged thereby, except as expressed in said permit and the conditions aforesaid."

These provisions became section 124 of said revision of 1913. The permit here involved contained a provision that it was issued "subject to the provisions of the building regulations of the District of Columbia."

It thus appears that from 1791 to 1897 permits were issued upon the payment of a permit fee. From 1897, down to and including the date when the permit here involved was issued, the building regulations specifically provided that no charge would be made for the occupancy of vault space, "except the usual permit fee."

Section 7 of the Act of September 1, 1916 (39 Stat. 716), provided:

"That hereafter the commissioners of the District of Columbia are authorized and directed to assess and collect rent from all users of space occupied under the sidewalks and streets in the District of Columbia, which said space is occupied or used in connection with the business of said users."

Regulations looking to the enforcement of this statute were promulgated by the commissioners, and this suit was brought to enforce the collection of rent for the vault space occupied by appellant under the permit heretofore mentioned. It is the contention of the District that appellant's rights are to be measured by the provision in the regulations in force when the permit was issued, namely, that "no right, title, or interest of the public is in any way waived or abridged," and hence that appellant is a mere licensee, subject to the will or pleasure of the commissioners.

Appellant, on the other hand, contends that, as its permit was issued subject to the provisions of the building regulations, all the provisions of those regulations must be considered in determining the rights of appellant; that one of those conditions was that no charge would be made, other than the usual permit fee; that, having constructed the vault upon conditions set forth in the regulations, which specifically were made applicable by the permit, appellant obtained a valuable right, of which it may not be deprived summarily; that Congress must be presumed to have intended the preservation of vested interests, and therefore that the statute of 1916 must be given a prospective interpretation.

In 3 Dillon on Mun. Cor. (5th Ed.) § 1178, the learned author says:

"In many cities lot proprietors upon streets are permitted or not forbidden to make openings in the sidewalks, in order to obtain an entrance into the basement or cellar. It is also the usage that owners of buildings may make openings under the sidewalk or street to obtain additional cellar room."

In Gregsten v. Chicago, 145 Ill. 451, 34 N. E. 426, 36 Am. St. Rep. 496, the court ruled:

That "it is the general doctrine that municipalities, under the power of exclusive control of their streets, may allow any use of them consistent with the public objects for which they may be held;" that "a city under special legislative authority, as well as its general powers, may grant permits for and regulate the building of vaults under the streets, alleys and sidewalks, and require such compensation for the privilege as it may deem reasonable and just, when such permits relate solely to such use of the alleys, etc., as is in no wise inconsistent with their use by the public; and such permit when accepted and acted on by the holder by making costly improvements required, will constitute a contract between the city and such holder, irrevocable at the mere will of the city."

In Tacoma Safety Deposit Co. v. Chicago, 247 Ill. 192, 93 N. E. 153, 31 L. R. A. (N. S.) 868, 20 Ann. Cas. 564, the court reaffirmed the doctrine that, where contractual relations exist between the city and the occupant of vault space, the rights of the occupant may not be abridged summarily. In the Minor Privilege Cases, 131 Md. 600, 102 Atl. 1014, the municipality attempted to revoke all permits for the occupation of public space, including awnings, areaways, vaults, etc.; the real purpose, as the court found, being to require the holder of such permits to make annual payments for the privileges enjoyed. The court, after an exhaustive examination of the question, ruled that this might not be done; that the attempted revocation was not in the exercise of police power, but primarily to obtain revenue. The court said:

"No one would expend any considerable sum of money for the ornamentation of his property and benefit of his business, and pay for the privilege, if he supposed that it could be taken from him the next day, month, or year, unless he paid such additional sum as that or some other board exacted of him."

See, also, Babbage v. Powers, 130 N. Y. 281, 29 N. E. 132, 14 L. R. A. 398.

[1, 2] In the present case there is no contention that the space occupied by appellant is needed for public purposes, nor is it charged that appellant has failed to comply with any condition affixed to its permit. Every occupant of public space under such permits is subject, of course, to all reasonable police regulations, and, if the space occupied by him is required by the public, his interest instantly must yield to that of the public. These conditions materially affect the value of the privilege enjoyed. The provision in the act of 1916 is in no sense a police measure; its sole purpose being to provide revenue. It must be assumed that in the enactment of this provision Congress intended to preserve vested interests. The vault in question having been erected upon condition that no charge would be made for use of the space occupied, we are of the view that Congress did not intend to abridge the right of appellant by the enactment of this statute. The provision relied upon by the District, to the effect that no right, title, or interest of the public is in any way waived or abridged, is followed by the words, "except as expressed in said permit and the conditions aforesaid"; and those conditions, as we have seen, mean that, while no charge will be exacted for the occupancy of such public space, the rights of the public are paramount, and upon a proper showing of pub-

lic necessity the occupation of the space must be restricted or terminated. We rule, therefore, that the statute in question was intended to apply, and does apply, only to permits thereafter issued.

The judgment is reversed, and case remanded for further proceedings.

Reversed and remanded.

.SMYTH, Chief Justice, dissents.

