Elmhurst National Bank, as Trustee Under Trust No. 731, Appellee, v. City of Chicago, a Municipal Corporation, Appellant.

Gen. No. 47,536.

First District, First Division.

March 23, 1959.

Released for publication May 13, 1959.

John C. Melaniphy, Corporation Counsel of the City of Chicago (Sydney R. Drebin, Rita Ivy Epstein, Assistant Corporation Counsel, of counsel) for defendant-appellant.

Bernard Allan Fried, of Chicago, for plaintiff-appellee.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from a judgment of the Circuit Court of Cook County against the City of Chicago assessing damages in the sum of $1.00 and costs.

The judgment was entered in a consolidated action for trespass and forcible detainer brought by the Elmhurst National Bank against the City of Chicago and certain public utilities, which were afterward dismissed, leaving the City of Chicago as the sole defendant. The action is based on an alleged trespass on the part of the city in maintaining water and sewer pipes beneath the surface of two streets, the fee to which is in the Elmhurst National Bank, and over which the City of Chicago has an easement. An answer was filed by the city and the bank moved for judgment on the pleadings. The court on June 26, 1957 entered an order finding the defendant City of Chicago guilty of trespass and ordering the cause set for hearing for assessment of damages. Hearing was had, evidence was heard, and on January 20, 1958 the court entered the judgment for $1.00 and costs in favor of the plaintiff

and against the City of Chicago, from which judgment this appeal is taken.

There is only one issue before us, and that is as to whether the city under a declaratory judgment entered in 1955, which provided that the surface of the streets involved herein had become public highways over which the city has an easement, gave the right to the city to maintain sewer and water pipes in the sub-surface of such streets. The declaratory judgment was entered in an action brought by the plaintiff against the City of Chicago. In that judgment the court found that the plaintiff owned certain described real estate in the City of Chicago; that such property was crossed by two streets, 45th Street and Archer Avenue; and that the city had by prescription acquired an easement for use of the streets as public highways. The decree further stated:

"Accordingly the rights of the parties are hereby declared to be as follows:

"A. By virtue of the use of said streets by the general public for more than 15 years the surface of said streets have become and are public highways according to the statutes in such case made and provided, and the defendant as trustee for the public has an easement over those streets for use as a public highway until vacated according to law.

"B. Subject only to the rights of the defendant as declared in Paragraph A, the plaintiff is the owner of the real estate above described in fee simple and has the right to put it to any lawful use and to build and improve the same above and below the surface without any interference by the defendant or any person whatsoever except as such interferences may lawfully be had pursuant to any valid statutes of the State of Illinois or ordinance of the City of Chicago."

Both parties are in substantial agreement that this decree is res judicata and binding upon both parties

182

with respect to their rights with reference to the real estate and the easement over the streets herein involved.

It is well established law that where an owner of property abutting a street is the owner of the fee to the street and the municipality has only an easement over the property for use as a street the owner has the right to make any reasonable use of the land, including the subsurface, which is not inconsistent with the easement and does not interfere with the paramount rights of the public. 10 I. L. P. Cities, Villages, etc., sec. 1258. In City of Dixon v. Sinow & Weinman, 350 Ill. 634, the court said:

"The easement for a street includes such use of the land at or beneath the surface as will make the easement effective. In the case of a street, where the fee remains in the adjacent land owner, the public authorities may change the grade, build sewers, drains and culverts, lay water pipes and make, or cause to be made, various other improvements; and the owner of the fee has no right to interfere with the use of the street for public purposes. (Town of Palatine v. Kreuger, 121 Ill. 72; City of Quincy v. Bull, 106 id. 337.) The owner of the land under a street, however, may make any reasonable use of his land that is not inconsistent with the proper enjoyment of the easement by the public. (Tacoma Safety Deposit Co. v. City of Chicago, 247 Ill. 192; Sears v. City of Chicago, 247 id. 204; Davis v. City of Chicago, 333 id. 422.)"

See 25 Am. Jur. Highways, sec. 166; City of Quincy v. Bull, 106 Ill. 337; Horn v. City of Chicago, 403 Ill. 549; City of Elmhurst v. Buettgen, 394 Ill. 248; and also Peoples Gas Light and Coke Co. v. Chicago, 413 Ill. 457, in which the court cites with approval Sears v. Crocker, 184 Mass. 586, where it was held that the construction and operation of a subway beneath the surface of a public street was a reasonable use of the

183

street and did not impose an additional servitude upon the lands constituting the street, the fee to which was in the owners of abutting properties. See also People ex rel. Mather v. Marshall Field & Co., 266 Ill. 609. The plaintiff does not question this rule of law but insists it is not applicable to the instant case since by the declaratory judgment the rights of the city were limited to the surface of the street. The city, on the other hand, argues that under the decree the city has an easement together with the right to use the subsurface for the purpose of laying sewer and water pipes.

■ ■ In order to determine that question it is necessary to construe the decree. In the decree the court finds that by reason of the use of the streets by the general public for fifteen years the surface of the streets has become a public highway and that the City of Chicago has "an easement over those streets for use as a public highway." We must assume that the court when it entered the decree knew the law with respect to the necessary concomitants which legally flow from the establishment of a public easement in a street when the fee to the street is in the abutting owner. In City of Elmhurst v. Buettgen, supra, the word "street" is said to be a generic term and includes all urban ways which are generally used for ordinary purposes of travel, citing Carlin v. City of Chicago, 262 Ill. 564. Plaintiff contends that the court's finding in the decree that the "surface of the said streets have become and are public highways" was a finding that a restricted easement exists in the city. In order to resolve the correctness of such contention it becomes necessary to determine the meaning which the courts have given the word "surface."

In City of Salisbury to Use of Rafter v. Schooler, 331 Mo. 291, 53 S.W.2d 267, the court says:

"In determining the meaning of a word we must always keep in mind the subject-matter under discus-

184

sion. When lawyers speak of a 'case' it is usually, though not always, with reference to a lawsuit. When the brewers of old spoke of a 'case,' the word had an entirely different meaning. So in ascertaining the meaning of the word 'surface' we must give some consideration to the subject-matter under discussion."

For instance, in mining controversies the word "surface" has been given a certain definite meaning, and in Shell Oil Co. v. Manley Oil Corporation, 124 F.2d 714, a case which interpreted the meaning of a conveyance of the "surface only" of a tract of land in which there were veins of coal, the court, applying Illinois law, held that the grantors had conveyed only the surface of the land and that by "surface" was meant "the super-incumbent land imposed upon the minerals, and all of the right to use the surface for such ordinary uses as may be made thereof, with the right to use as much of the subsurface as may be necessary for the customary and ordinary uses of the surface, . . ." and that the word "surface" in mining controversies means that part of the earth lying over the minerals in question.

With reference to the use of the word "surface" in connection with an easement such as is involved in the case before us, the court in Coverdale v. Charlton, Law. Rep. 4 Q. B. 104, in determining what is meant when a street is "vested" as a public road, where the fee is in the abutting owner, says (p. 117): "The meaning I put upon the word 'vest' is, the space and the street itself, so far as it is ordinarily used in the way that streets are used, shall vest in the local board." The court also says (p. 118): ". . . 'street' comprehends what we may call the surface, that is to say not a surface bit of no reasonable thickness, but a surface of such a thickness as the local board may require for the purpose of doing to the street that which is necessary for it as a street, and also of doing those things

185

which commonly are done in or under the streets; and to that extent they had a property in it." Again, it says (p. 121): " 'Street' means more than the surface, it means the whole surface and so much of the depth as is or can be used, not unfairly, for the ordinary purposes of a street. It comprises a depth which enables the urban authority to do that which is done in every street, namely, to raise the street and to lay down sewers; for, at the present day, there can be no street in a town without sewers, and also for the purpose of laying down gas and water-pipes. 'Street,' therefore, in my opinion, includes the surface and so much of the depth as may be not unfairly used, as streets are used." In Horn v. City of Chicago, supra, the plaintiffs as abutting owners brought an action to recover damages rising out of the construction of a viaduct in the City of Chicago. In their complaint the plaintiffs alleged that they "owned the title, in fee, to the streets and alley adjoining their property to the center of the highway, subject only to an easement in the city of Chicago for *surface* highway purposes" (italics ours). A motion to dismiss was filed by the city on the ground that the statute of limitations had run against the plaintiffs, and that motion was sustained both by the trial court and the Supreme Court. However, in its opinion the Supreme Court says:

"It is admitted that complainants' ownership of the fee is subject to an easement in favor of the public for street purposes. The easement for a street includes such use of the land at or beneath the surface as will make the easement effective, and for that purpose the public authorities may change the grade of the street and the owner of the fee has no right to interfere. (City of Dixon v. Sinow & Weinman, 350 Ill. 634.) Where the owners of abutting lots own the fee in the street the city may use such streets, including the sidewalk space, for all purposes to which a street may be put

186

without the consent of the abutting owners. (Tacoma Safety Deposit Co. v. City of Chicago, 247 Ill. 192.) The title of the abutting owner to the center of the street is a present subsisting ownership of the fee which he may subject to any private use he sees fit so long as it does not interfere with public travel. (Davis v. City of Chicago, 333 Ill. 422.)"

In that case the admitted allegation was that there was an easement in the city for "surface highway purposes" and the court considered that such an easement carried with it all the incidental and ordinary rights which accrue to an easement to a street. In the instant case we hold that it was the intent of the court in the declaratory judgment to give to the city an easement in the streets which carried with it all rights to the subsurface of the streets which would make the easement effective, and this would include the laying of sewer and water pipes therein.

The plaintiff argues that the court should give effect to the finding of the master in the declaratory judgment case, objections to which were overruled by the court, that "beneath the surface of the highway there may lie various public utility lines" which the plaintiff may regard as trespasses. If it can be considered that this finding of the master in a declaratory judgment case has any effect, it would not be applicable to the case before us since all of the public utility defendants were dismissed and the only defendant in the suit was the City of Chicago. In any case it may be significant to note that the court did not include that finding of the master in its decree.

█ █ In its brief the plaintiff has moved to strike the brief and argument of the defendant on the grounds that the notice of appeal filed by the City of Chicago was not sufficient to support any contention with reference to the finding of the court of June 26, 1957 that the city was a trespasser and that the notice

187

of appeal is merely from the judgment for $1.00 and costs entered on January 20, 1958. This motion is not presented in accordance with the rules and could properly be disregarded. In support of its contention the plaintiff asserts that the order of June 26, 1957 was a final and appealable order. If that ever was the law it no longer is since the revision of the Practice Act which became effective in 1956. Ariola v. Nigro, 13 Ill.2d 200; Hanley v. Hanley, 13 Ill.2d 209. We find no merit in the contention of the plaintiff and its motion is denied.

The judgment of the Circuit Court is reversed.

Judgment reversed.

DEMPSEY and SCHWARTZ, JJ., concur.