LINCOLN-WAY COMMUNITY HIGH SCHOOL DISTRICT 210, Plaintiff-Appellant, v. THE VILLAGE OF FRANKFORT, Defendant-Appellee.

Third District No. 76-381

Opinion filed August 23, 1977.

604

Theodore Bednarek and Robert J. Baron, both of Thomas, Wallace, Feehan & Baron, Ltd., of Joliet, for appellant.

Wayne R. Johnson and George F. Mahoney, III, both of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Will County dismissing the plaintiff's complaint because it is barred by the statute of limitations and by laches.

The plaintiff raises the following points upon appeal: (1) the trial court erred in ruling that the statute of limitations bars plaintiff's action; (2) the trial court erred in ruling that plaintiff was guilty of laches under the facts of this case; (3) the trial court erred in determining that the sewer line is located under the right-of-way of Colorado Avenue.

On January 13, 1966, Lincoln-Way Community High School District 210, hereinafter known as plaintiff, entered into an agreement to purchase two parcels of land on contract from Marie Shilling, executor and trustee under the last will and testament of Otto C. Shilling. Plaintiff became owner in fee on October 15, 1974. The parcels of real estate are in the village of Frankfort at the intersection of Colorado Avenue and Route 45. The school property is bounded on the south by Colorado Avenue and on the east by Route 45. Plaintiff purchased the real estate so that a high school could be built at a future date. Before the plaintiff purchased the property, it obtained title insurance and had the real estate surveyed. There were no drawings or plats prepared in addition to the survey. Colorado Avenue commences at U.S. Route 45 then runs westerly and slightly to the south along the entire length of the tract traversing the majority of the north half of Section 21 in Frankfort Township. It appears that Colorado Avenue lies almost entirely within the southern boundary of plaintiff's property. Plaintiff contends that this was not discovered until 1974, when a survey was made preparatory to the building of the new

high school. Colorado Avenue was not created by way of a grant of easement or dedication. Plaintiff also contends that this was not discovered until 1974.

While Colorado Avenue has not been dedicated by plat or by recorded grant of dedication, a 1893 Frankfort Township plat and a 1900 Frankfort Township plat indicate the existence of a road at approximately the same location then as today. It is not disputed that Colorado Avenue has a long history of prescriptive use. The general public has used Colorado Avenue for purposes of travel for approximately 50 years.

Herman Barlewort, who owned, farmed and lived upon plaintiff's land until 1963, testified by stipulation that, "the public in general had free, unrestricted, open and notorious use in common to Colorado Avenue. He is not aware of any request by the public in general to use Colorado Avenue or its continuous right-of-way."

In general, this use has been confined to the blacktop surface of the road. It is disputed whether the public used any portion of the land north of the blacktop surface.

The township highway commissioner, Walter Yunker, had the duty of maintaining Colorado Avenue. He was helped by an employee, Francis O'Brien. Colorado Avenue had been a gravel road until 1966 when it was resurfaced. The township highway commissioner and his helper maintained the road by plowing it, grading it, and resurfacing it. Their maintenance of Colorado Avenue was confined to the blacktop area except when they mowed weeds and grass during the summer months. The grass and weeds were mowed from the roadway to the limits of cultivation, a distance of approximately 10 feet.

There is testimony that at some time during 1973 the ditch which runs along Colorado Avenue was reshaped and restructured by the township highway commissioner. The ditch had existed for some 40 years prior to its reshaping.

Originally, a rail fence and subsequently a hedge fence ran along the south part of the plaintiff's property north of the travelled portion of Colorado Avenue. These fences were the southern limits for plowing and cultivation. Although the original fence no longer exists, remnants of the hedge fence still remain. In March, 1975, Herman Barlewort located the south fence line of the tract at various points along Colorado Avenue by stakes with attached red flags. It was photographed showing its relation to the tract's southern limits of cultivation to Colorado Avenue, the roadway ditch, and the sewer line manhole covers.

It appears from the record that the fence line is not parallel to the ditch. The distance between the fence line and the ditch increases as they extend in a westerly direction along the southern boundary of plaintiff's land,

from 10 to approximately 15 feet. No one is sure who built the fence, why it was built, or when it was built. It is apparently unclear whether the fence line was built to represent the limits of public use of Colorado Avenue.

Early in 1966 the Village of Frankfort, hereinafter known as defendant, entered into negotiations with the Association of Franciscan Sisters for the extension of defendant's sanitary sewer service to the Sister's property, commonly known as St. Francis Woods, which is situated in Section 15 of Frankfort Township. The property is located east of plaintiff's property across Route 45. The sewer facilities are located southeast of plaintiff's tract across Colorado Avenue.

The village engineer, Robert E. Hamilton, drafted alternate plans for the sewer connection. The plans for the most direct route from the Sisters' property to the sewage treatment facilities were rejected because of the difficulty in obtaining the necessary easements. A more circuitous route along the north side of Colorado Avenue was used. The final sewer plans were to route the line east down St. Francis Road, then south along U. S. Route 45 to Colorado Avenue, then west along the north side of Colorado Avenue to the sewage treatment facility.

In the spring of 1967, the Sisters agreed that a sewer main would be constructed and then dedicated to the village. This was memorialized by a resolution of the defendant on June 5, 1967. The Sisters were to obtain the necessary easements and permits for the sewer route.

It appears that the defendant did not consider eminent domain proceedings or attempt to obtain easements or have a boundary survey made. It also appears that none of defendant's board members questioned whether Colorado Avenue had been dedicated. The plans for the sewer line were approved at the May 8, 1967, meeting of defendant's board.

The plaintiff's board president, Elias Brown, a member of its board, W. W. Morrison, and its superintendent of buildings and grounds, Frank Goetschel, attended that meeting. The proposed high school was to be located at the west end of the plaintiff's property. The minutes of the village board meeting state that Robert Hamilton told the three men, "about the depth of the sewer line at the West end of the High School property." There is nothing to indicate that the three men inquired about the plaintiff's boundaries, easements over the plaintiff's property, eminent domain proceedings, the dedication of Colorado Avenue, or any other matter concerning the sewer line.

At the May 11, 1967, regular monthly meeting of the plaintiff's board, Frank Goetschel gave a report on the "ramifications of hooking on to the Frankfort sewer line in the future. When Lincoln-Way's second site is ready to hook on, an agreement with the Frankfort Village will have to be

made." There is nothing in the minutes to indicate that inquiry had been made about plaintiff's boundaries, easements over the plaintiff's property, eminent domain proceedings, the dedication of Colorado Avenue, or any other matter concerning the sewer line and that assurances regarding them had been given by defendant or its representatives.

The township highway commissioner, Walter Yunker, gave his verbal approval of the sewer line. He did not physically go out and watch the installation of the sewer line. He never saw the ditch opened or the sewer main installed. During the summer of 1967 Hulett Corporation installed the sewer. The pipe does not run truly parallel to the ditch. There is nothing in the record to indicate where the underground portions of the pipe are in relation to the ditch. Some of the manholes are to the south of the ditch, one or two are in the ditch, and some are to the north of the ditch.

The plaintiff contends that it did not discover that no easement for the sewer line existed until November 1974, during the campaign for the bond issue for the construction of the future high school. When the plaintiff's board was making presentations concerning the future high school, one of the members of the public who had attended the meeting suggested to one of plaintiff's board members that the site ought to be resurveyed because he thought that there was some problem with the boundary lines. At that time the land was resurveyed and it was determined that the pipe line was actually installed on plaintiff's land. The plaintiff's board requested that the defendant remove the sewer line. The defendant refused.

Joseph Kruzich, then assistant superintendent of plaintiff, testified that in the summer of 1967 he knew that the sewer line would be located on the north side of Colorado Avenue. He had heard plaintiff's superintendent, A. Hunter Chapman, and its superintendent of buildings and grounds, Frank Goetschel, discuss it and had read about it in the newspaper.

Prior to the purchase by the plaintiff, the land was used for agriculture. After the purchase, the land was vacant.

On March 6, 1975, plaintiff filed suit.

Plaintiff asked for damages and mandatory injunctive relief. Defendant pleaded the affirmative defenses of the statute of limitations and laches. The statute of limitations involved here is section 15 of The Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 16): "[A]ctions * * * to recover damages for an injury done to property, real or personal, * * * shall be commenced within five years next after the cause of action accrued."

■■ The statute of limitations and the doctrine of laches have a common purpose: to prevent prejudice to the defendant caused by plaintiff's undue delay in filing suit. It has been well established that

records are lost and memories dimmed with the passage of time. Without the statute of limitations and the doctrine of laches, defendants would be unable to vigorously answer the charges of plaintiffs, with resulting injustice. A system based on equal justice for all cannot tolerate such a situation.

■■ As a rule, the statute of limitations is a legal defense and laches is an equitable defense. A statute of limitations is a designated period of time during which a cause of action must be brought or forever barred. This is an exact period of time which can be measured by days. The cause of action accrues, and the time period during which suit must be brought begins, when "* * * all the elements of the action are present, including a legal duty, the breach of that duty, and injury resulting from such failure." *Coumoulas v. Service Gas, Inc.* (1973), 10 Ill. App. 3d 273, 274, 293 N.E.2d 187.

■■ This is a harsh rule; it takes no cognizance of the situation in which the plaintiff is unable to discover, regardless of his diligence, that he has been injured until after the limitations period has passed and suit is forever barred. In order to mitigate this harshness, the courts have by judicial interpretation formulated the so-called discovery rule. This rule provides that the limitations period begins when the plaintiff knew or should have known that he was injured. See *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 334 N.E.2d 160; *E. J. Korvette v. Esko Roofing Co.* (1976), 38 Ill. App. 3d 905, 350 N.E.2d 10; *Auster v. Keck* (1975), 31 Ill. App. 3d 61, 333 N.E.2d 65; *Wigginton v. Reichold Chemicals, Inc.* (1971), 133 Ill. App. 2d 776, 274 N.E.2d 118; *McDonald v. Reichold Chemicals, Inc.* (1971), 133 Ill. App. 2d 780, 274 N.E.2d 121.

■■ In applying the discovery rule the court will balance the hardship on the plaintiff caused by the bar of his suit against the burden on the defendant to obtain proof of his defense. (*Society of Mt. Carmel v. Fox* (1975), 31 Ill. App. 3d 1060, 335 N.E.2d 588.) Where the passage of time does not greatly increase the burden upon the defendant to find the necessary proof and the ends of justice are served by permitting the plaintiff to sue, the court will permit suit even though the limitations period has passed. *E. J. Korvette v. Esko Roofing Co.* (1976), 38 Ill. App. 3d 905, 350 N.E.2d 10.

The discovery rule simply means that the court will use the date upon which the plaintiff knew or should have known that he was injured as the day when the designated limitations period begins, rather than using the date of the injury as the day when the limitations period begins.

■■■ In the instant case the decision to install the sewer pipe along Colorado Avenue was made during late 1966 and early 1967. The plans

were approved on May 8, 1967, at a special meeting of defendant's board. During the summer of 1967, the sewer line was installed. The duty of defendant to refrain from encroaching upon plaintiff's land cannot be disputed. The failure of that duty occurred in 1967 and the injury to plaintiff occurred during the summer of 1967. Suit was not filed until March 6, 1975, nearly eight years after the injury occurred.

Plaintiff contends that it did not know that the sewer line was installed on its property until a survey was made in 1974 and therefore, the period of limitations should not have begun until 1974.

The record shows that Joseph Kruzich, the then assistant superintendent of plaintiff, knew that the sewer line was being installed in 1967 because he heard the plaintiff's superintendent and the plaintiff's superintendent of buildings and grounds discuss the installation and he read about it in the paper. The plaintiff's board president, Elias Brown, a board member, W. W. Morrison, and the superintendent of buildings and grounds, Frank Goetschel, attended the defendant's board meeting on May 8, 1967, and inquired about the depth of the sewer because of the proposed building of the school on the west corner of the tract. The minutes of the plaintiff's board meeting of June 11, 1967, reflect that the plaintiff's board was informed of the ramifications of the sewer line. The board had in its possession a survey of the tract prepared prior to its entry into an agreement to purchase the tract in 1964, which showed that Colorado Avenue was located on the plaintiff's property. All this makes us believe that the plaintiff, in the exercise of due diligence, knew or should have known of the injury to it prior to 1974. Therefore, we hold that the statute of limitations is a bar to plaintiff's cause of action.

■■ Plaintiff further contends that the defendant is estopped from raising the defense of the statute of limitations because of its conduct. We agree that estoppel may be a bar of the defense of the statute of limitation as well as to other defenses. (*Sabath v. Morris Handler Co.* (1968), 102 Ill. App. 2d 218, 223, 243 N.E.2d 723.) "If a party's conduct has reasonably induced another to follow a course of action that otherwise would not have been followed, and which would be to the latter's detriment if he could not later repudiate such course of action, an estoppel will arise to prevent injustice * * *." (*Sabath v. Morris Handler Co.* (1968), 102 Ill. App. 2d 218, 223, 243 N.E.2d 723.) The necessary elements are the conduct by defendant and the reliance by plaintiff. If the plaintiff's reliance was not reasonable, the defendant is not estopped from raising his defense even though plaintiff relied to his detriment. *Reat v. Illinois Central R.R. Co.* (1964), 47 Ill. App. 2d 267, 197 N.E.2d 860; *Owens v. Union Bank of Chicago* (1931), 260 Ill. App. 595.

The test is whether, considering all the circumstances of the case,

conscience and honest dealing require that defendant be estopped. *Howard v. West Jersey & Seashore R.R. Co.* (1928), 102 N.J. Eq. 517, 141 A. 755.

In the instant case, plaintiff's board president, Elias Brown, member, W. W. Morrison, and superintendent of buildings and grounds, Frank Goetschel, were present at the defendant's board meeting held May 8, 1967, when the plan for the installation route of the sewer line was discussed. Defendant's engineer, Robert Hamilton, told plaintiff's officials that the sewer line was to be located on the north side of Colorado Avenue.

The plaintiff contends that Brown, Morrison and Goetschel were laymen who were blinded by the aura of authority inherent in the defendant's board meeting and they were unable, because of that, to discover that the plaintiff was injured. This strains the credibility. These men were themselves involved in public meetings at which thousands of dollars were spent and the future of hundreds of students determined. We cannot believe that they were so naive that they did not understand what was being said and done.

■■ Plaintiff urges that the officials did not know that the pipe line was laid on plaintiff's property. The question of easements was not raised because the parties believed that the sewer line would lie on the Colorado Street right-of-way and, therefore, could be installed by the defendant. It is well established that a municipality may lay sewer lines, water pipes, utility lines, etc., in the subsurface along its easement. (*Elmhurst National Bank v. City of Chicago* (1959), 21 Ill. App. 2d 180, 157 N.E.2d 781.) These things need only be reasonably necessary for the purposes of the street and service of the public. If an easement had existed, it is agreed by both parties that the sewer line could have been installed.

Frank Goetschel reported on defendant's board meeting at the June 11, 1967, meeting of plaintiff's board. We do not know exactly what was said at each of these meetings. We have only the recollections of those present and the minutes of those meetings. The minutes give little substance of any discussions. Still, we do find it significant that the question of easements was apparently not raised at plaintiff's board meeting. This indicates a lack of diligence on the part of the plaintiff's board members to determine what the extent of plaintiff's property was and whether it was being encroached upon by defendant. This lack of diligence cannot be excused; they knew that the defendant planned to install a sewer line in 1967. They cannot later claim that they did not know.

We do not believe that plaintiff reasonably relied on representations made by defendant or its agents. The plaintiff had in its possession a survey dated 1965, which showed the boundaries of its property. The

survey showed that Colorado Avenue was located almost entirely within the southern boundary of plaintiff's property.

■■ We do not believe it unjust to charge plaintiff with knowledge of the materials in its possession. Therefore, we hold that there was no reasonable reliance by plaintiff and as a result there is no estoppel preventing defendant from raising the defense of the statute of limitation.

The defendant also pleaded the defense of laches. The plaintiff contends that the defendant is barred from raising the defense of laches.

■■ Laches, like the statute of limitations, is a bar to suit. Laches is the "* * * neglect or omission on the part of a complainant to assert a right, taken in conjunction with a lapse of time, and other circumstances causing prejudice to an adverse party, which will operate as a bar to pursue the claim in a court of chancery." (*Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 650-51, 344 N.E.2d 770, 681.) The necessary elements of laches are the delay and the prejudice. If there is no prejudice to the defendant caused by the delay of the plaintiff in bringing suit, there is no application of laches. *Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 344 N.E.2d 770; *Atwater v. Atwater* (1974), 18 Ill. App. 3d 202, 309 N.E.2d 632; *Colucci v. Chicago Crime Com.* (1975), 31 Ill. App. 3d 802, 334 N.E.2d 461.

Laches is not an exact period of time. It is dependent upon the facts and circumstances of each case.

In the instant case, there was a delay of nearly eight years between the injury and the filing of plaintiff's suit. During that time the sewer line had been installed and was being used. The sewer line was installed at a cost in excess of $70,000. The estimated cost of removing and relocating the sewer line is in excess of $48,000. In addition to the cost there would be an interruption in service to those using the line. This would prejudice the defendant.

■■ It must be remembered that the plaintiff knew of the proposed installation of the sewer line, yet did nothing to prevent it. It knew or should have known that the sewer line would lie on its property, yet it again did nothing until nearly eight years after the installation of the sewer line. We believe that the failure to act on the part of the plaintiff caused prejudice to the defendant and therefore plaintiff's suit is barred by laches.

We believe that our earlier discussion of estoppel in regard to the statute of limitations applies also to laches. We hold that defendant is not barred from asserting the defense of laches.

We deem it necessary to comment to the effect that plaintiff's theory that the delay was excused by the dormant nature of the land is unfounded. We believe that the plaintiff's board had an affirmative duty

to preserve the plaintiff's property and that the dormant nature of the land is not a factor.

Plaintiff also raised the point that the court erred in determining that the sewer line is located under the right-of-way of Colorado Avenue. Since we have held that plaintiff's suit is barred by both the statute of limitations and the doctrine of laches, any lengthy discussion of this point would be superfluous. However, we do think it necessary to comment on this matter.

The record shows that the sewer pipe line was to run along Colorado Avenue. There was a drainage ditch along Colorado Avenue which had existed for more than 40 years. It is unclear whether that ditch was truly parallel to Colorado Avenue. It does appear, however, that the sewer pipe did not run truly parallel to the ditch. There is nothing in the record to indicate where the underground portions of the pipe are in relation to the ditch. Some of the manholes are to the south of the ditch, one or two are in the ditch, and some are to the north of the ditch.

■■ We do hold that there was an easement by prescription for the public use of Colorado Avenue. An easement for a street includes the use of the subsurface which will make the easement effective. (*City of Highland Park v. Driscoll* (1962), 24 Ill. 2d 281, 181 N.E.2d 93.) It is well established that those things which are commonly done in or under a street may be done. (*Elmhurst National Bank v. City of Chicago* (1959), 21 Ill. App. 2d 180, 157 N.E.2d 781.) Where drainage ditches are required to make a street easement effective, the street easement includes the drainage ditches. (*City of Highland Park v. Driscoll* (1962), 24 Ill. 2d 281, 181 N.E.2d 93.) Therefore, the use of the subsurfaces of the drainage ditches is permitted. We hold that under the facts and circumstances of this particular case, the trial court was justified in finding that the sewer line was located under the right-of-way of Colorado Avenue.

For the reasons stated above, the judgment of the circuit court of Will County is affirmed.

Affirmed.

STENGEL, P. J., and BARRY, J., concur.