THE CITY OF O'FALLON, Plaintiff-Appellee, v. BANK OF BELLE-VILLE, as Trustee, *et al.*, Defendants (Fidelity & Deposit Company of Maryland, Appellant).

Fifth District   No. 5—87—0227

Opinion filed June 28, 1988.

David M. Duree, of O'Fallon, and James A. Bingley, of Leritz, Reinert & Duree, P.C., of St. Louis, Missouri, for appellant.

Delmar O. Koebel, of Lebanon, for appellee.

JUSTICE WELCH delivered the opinion of the court:

This appeal is taken from a judgment entered on March 3, 1987, in the circuit court of St. Clair County against Fidelity & Deposit Company of Maryland, acting as a surety, assessing damages in the sum of $14,310 plus costs.

On October 26, 1983, the City of O'Fallon filed suit against the Bank of Belleville, Fidelity & Deposit Company of Maryland, and Terrence McKean. The recovery sought and obtained by the City of O'Fallon consisted of reimbursement for a portion of a subdivision development agreement not satisfied by defendants. The Bank of Belleville was named as the trustee of a parcel of land situated in the Parkview Gardens subdivision within the City of O'Fallon. Terrence McKean, the sole beneficiary under the land trust, submitted to the city on behalf of the Bank of Belleville a proposed development consisting of the Fifth Addition to Parkview Gardens. Fidelity & Deposit Company of Maryland (hereinafter Fidelity), as the surety, and Bank of Belleville, as principal, executed a subdivision bond as required by O'Fallon city ordinance No. 801. The Bank of Belleville and Terrence McKean were dismissed as party defendants prior to trial.

After a one-day trial on November 5, 1986, the court found that the developer had failed to complete the subdivision development as agreed, and the city was entitled to a portion of the bond posted by Fidelity. Fidelity brings this appeal, contending that the portion of the development not completed by the developer was not covered under the subdivision bond. Specifically, Fidelity argues that, by the terms of

the subdivision bond, its suretyship obligations extended only to improvements consisting of streets and sidewalks, and did not include the culvert for which the trial court required Fidelity to pay.

In support of its argument, Fidelity cites *Finley v. Crossley* (1961), 33 Ill. App. 2d 212, 178 N.E.2d 684, wherein the court held that a surety's contract is to be strictly construed and the surety's liability is not to be extended by implication. Relying on the *Finley* holding, Fidelity argues that the strict terms of the subdivision bond hold Fidelity liable for unsatisfactory workmanship on behalf of the developer, limited to the installation of improvements consisting of only streets and sidewalks. Considering the phrase "improvements consisting of streets and sidewalks" in isolation, it is possible to construe Fidelity's liability so that its liability extends to only streets and sidewalks, and does not include any of the facilities commonly found beneath and upon a street. However, such interpretation in the present case ignores the fundamental rule of contract construction requiring that an instrument should be given a fair and reasonable interpretation based on consideration of all its language and provisions. (*Shelton v. Andres* (1985), 106 Ill. 2d 153, 478 N.E.2d 311.) Additionally, it is our opinion that the narrow interpretation suggested by Fidelity ignores the practical meaning of the word "street."

Considering the language in the subdivision bond in its entirety, the bond must be interpreted as incorporating the agreement made between the principal and the city pertaining to the subdivision development. The second provision of the subdivision bond states that the "Principal has filed with the proper authorities of the City of O'Fallon, Illinois a plat proposing a subdivision of said tract described therein as 'Fifth Addition to Parkview Gardens,' City of O'Fallon, St. Clair County, Illinois." The final provision of the bond agreement conditions Fidelity's liability on the principal's failure to "complete the installation as prescribed and required by City of O'Fallon." In *Fisher v. Fidelity & Deposit Co.* (1984), 125 Ill. App. 3d 632, 466 N.E.2d 332, we ruled that where the bond incorporates by reference the construction contract, the provisions of the construction contract are provisions of the bond. Although in the present case the construction contract is not specifically referred to in the bond as it was in *Fisher*, the bond alludes to the agreement between the developer and the city such that the ruling of *Fisher* applies and Fidelity is bound as surety until the principal "completes the installation as prescribed and required by City of O'Fallon."

The minimum standard for street improvements stated in Ordinance 625, the Land Subdivision Control Ordinance of the City of

O'Fallon, Illinois, section 5.3, provides in part:

"All new streets, which are created and dedicated for use within a subdivision, shall be graded, drained and surfaced in accordance with the minimum requirements hereinbelow set forth and in a manner which will provide complete and adequate drainage of all the streets, alleys and public grounds in the entire subdivision, including any such work which may be necessary in order to provide adequate and satisfactory drainage along the side of any existing public street which lies adjacent to the subdivision."

"Street" is defined in the ordinance as "[a] general term denoting a public or private way for the purpose of vehicular travel. The term includes all facilities which normally occur within the right-of-way." We interpret the phrase "facilities which normally occur within the right-of-way" as including culverts and other drainage devices essential for the functionality of a street.

In *Elmhurst National Bank v. City of Chicago* (1959), 21 Ill. App. 2d 180, 157 N.E.2d 781, the court held that a declaratory judgment granting an easement in a street "carried with it all rights to the subsurface of the streets which would make the easement effective, and this would include the laying of sewer and water pipes therein." (21 Ill. App. 2d at 187, 157 N.E.2d at 785.) Following the *Elmhurst National Bank* court's interpretation of "street," and applying common knowledge that a culvert provides a passage below the street for water which might otherwise accumulate on the surface of the street and impede or possibly defeat the very purpose for which the street was constructed, we find that the culvert disputed in the instant case falls within the "improvements consisting of streets and sidewalks" and is therefore within the surety obligation.

■ We also reject Fidelity's argument that it must be released as surety in the event that it is obligated for anything more than the construction of streets and sidewalks as this would constitute contract variation without Fidelity's consent. (*Grundy County National Bank v. Cavanaugh* (1982), 105 Ill. App. 3d 718, 434 N.E.2d 803.) Based on the above-cited ordinance of the City of O'Fallon, and the definition of "street," we find that a culvert is an integral part of a street and the inclusion of drains, inlets, culverts and other facilities incidental to the installation of a street does not vary the obligation of Fidelity stated in the subdivision bond.

■ Nor do we find Fidelity's argument that the recent statutory modification regarding the statute of limitations applicable to a surety should be applied retroactively to Fidelity's benefit. It is well accepted

in Illinois that a statute will be given prospective application unless there is a clear expression of legislative intent that it is to be retroactively applied. *Zimmerman Brush Co. v. Fair Employment Practices Comm'n* (1980), 82 Ill. 2d 99, 411 N.E.2d 277.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is hereby affirmed.

Affirmed.

LEWIS and CALVO, JJ., concur.