**Deborah JOHNSON, Plaintiff,**

v.

**William Leo JOHNSON and Josephine Johnson, Defendants.**

**No. 88 C 2243.**

United States District Court,
N.D. Illinois, E.D.

Oct. 7, 1988.

**1364**

Hope F. Keefe, Brunswick, Keefe & Deer, Blue Island, Ill., for plaintiff.

Patricia C. Nowak, Terrence M. Burns, Rooks, Pitts & Poust, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Plaintiff Deborah Johnson brings this diversity suit against her parents, Defendants William and Josephine Johnson. Plaintiff claims that she has sustained injuries as a result of having been sexually abused while a child by Defendant William Johnson, and as a result of Defendant Josephine Johnson's failure to protect Plaintiff from her father's abuse. Plaintiff requests damages under various tort theories stemming from these injuries.

On May 6, 1988, Defendants moved to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b) arguing that the amended complaint was barred by the Illinois two-year statute of limitations. On July 1, 1988, Defendants filed their reply. In that reply, Defendants incorporated the affidavit of Josephine Johnson and two letters allegedly written by Plaintiff Deborah Johnson. In order to allow Plaintiff to respond to this affidavit, this court, by minute order dated September 7, 1988, gave Plaintiff the opportunity to file a surreply. In that same minute order, the court informed the parties that pursuant to Fed.R.Civ.P. 12(b), the court would treat Defendants' motion to dismiss as a motion for summary judgment because "matters outside the pleading [were] presented to ... the court." Fed.R.Civ.P. 12(b). For the reasons set forth below, Defendants' motion for summary judgment is denied.

### The Allegations of the Complaint

Plaintiff's complaint alleges that she is a citizen and resident of the State of California, and that Defendants are citizens of Illinois. Plaintiff alleges that "from the time she was approximately three years old until she was approximately twelve or thirteen years old (1958 through 1968), while the parties were residing first in Indiana and then in Ohio, Defendant William Leo Johnson did intentionally and repeatedly sexually molest and abuse Plaintiff...." (Amended Complaint, ¶ 5.)

Plaintiff also alleges that she "suppressed all memories of the alleged sexual abuse and was blamelessly ignorant of the causal connection between Defendant's acts and the injuries she suffered until on or about March 16, 1987, when in the course of psychotherapy, Plaintiff was able to begin to remember, perceive and understand the nature and scope of her injuries and their causal connection to Defendant's earlier acts." (Amended Complaint, ¶ 6.) Plaintiff alleges that the suppression of these memories was a self-protecting measure which "prevented Plaintiff from knowing, recognizing and understanding the nature of her injuries and the fact of their

causal relationship to Defendant's ... sexual abuse." (Amended Complaint, ¶ 7.)

Plaintiff also alleges that her parents "had a duty to protect Plaintiff ... and prevent acts of physical, sexual and psychological abuse directed at the Plaintiff...." (Amended Complaint, ¶ 23.) Plaintiff contends that "Defendant Josephine Johnson knew or should have known that Defendant William Leo Johnson, Plaintiff's father, was repeatedly abusing their infant daughter, but she did nothing to protect Plaintiff from its effects.... [and that] Defendant Josephine Johnson's failure to protect plaintiff and keep her safe from abuse was a breach of her duty to the Plaintiff and was a proximate cause of the [Plaintiff's] injuries...." (Amended Complaint, ¶¶ 24 and 25.)

Plaintiff's amended complaint contains four counts. In Count I, Plaintiff requests compensatory and punitive damages from Defendant William Johnson's intentional torts. In Count II, Plaintiff seeks compensatory damages including lost earnings against both Defendants for breach of their duty to protect Plaintiff. In Count III, Plaintiff seeks compensatory and punitive damages from Defendant William Johnson for the mental and physical distress and lost earnings which are proximately caused by Defendant William Johnson's intentional torts. In Count IV, Plaintiff seeks compensatory and punitive damages from both Defendants for the mental and physical distress and lost earnings which were proximately caused by both Defendants' negligence and carelessness in breaching their duty to protect Plaintiff.

*Facts*

Plaintiff alleges that she was subject to abuse from three years of age to approximately twelve or thirteen years old, i.e., 1958–1968. (Amended Complaint, ¶ 5.) Plaintiff was thirty-two years old in 1987. (Pl. Memorandum in Opposition at 1.) Defendant Josephine Johnson claims to have "received two (2) letters, dated January 1, 1984 and August 24, 1984.... [which she] recognize[s] now and recognized on or about the date on the letters ... the handwriting and signature [on the letters] to be that of [her] daughter, Deborah Johnson." (Ex. A, Def. Reply, June 29, 1988 Affidavit of Josephine Johnson at 1.)

Plaintiff states that on or about July 12, 1988, her counsel, Linda M. Scaparotti, gave her copies of the aforementioned letters. (Ex. A, Pl. Surreply, September 16, 1988 Affidavit of Deborah Johnson at 1.) Plaintiff states that "I have no memory or recollection of writing those letters. I know that I corresponded with my family over the years, but I do not remember ever writing to my mother or my parents concerning sexual abuse by my father.... Further, I would say the letters look like my handwriting, but it is different somehow—it seems larger, spacier, and more rounded. While I don't believe the letters are forgeries, I question whether I wrote those letters at all because I have no memory of it. It is as though I saw them for the first time on or about July 12, 1988. Further, I do not understand how I could have written those letters in 1984 because I had no memory of any sexual abuse by my father until on or about March 16, 1987, while I was in psychotherapy with Elizabeth E. Rayner, M.A., M.F.C.C." (Ex. A, Pl. Surreply, September 16, 1988 Affidavit of Deborah Johnson, ¶¶ 1 and 3.)

Plaintiff's therapist, Elizabeth E. Raymer, also filed an affidavit in this case. Ms. Rayner states that she has been treating Plaintiff from approximately January 1987 through the present. (Ex. B, Pl. Surreply, September 16, 1988 Affidavit of Raymer, ¶ 3.) Ms. Raymer's diagnosis of Plaintiff "is Multiple Personality Disorder (DSM III–R 300.14, Diagnostic and Statistical Manual of Mental Disorders, 3rd Ed., Revised, American Psychiatric Association (1987)).... [basing her] diagnosis on ... observation of Ms. Johnson, [her] understanding of DSM III–R, [and her] consultation with other mental health care practitioners in this field and [her] research and reading of scholarly articles in this field...." (*Id.* at 2, ¶ 4.) Ms. Raymer states that she "can testify ... that [Plaintiff] had no memory of the letters to her

mother dated 1/8/84 and 2/24/84[1]...." (*Id.* at 3, ¶ 5.) Ms. Raymer also asserts that the statements in Plaintiff's affidavit that she cannot remember writing the January 8, 1984 and August 24, 1984 letters and that the handwriting in the letters appeared similar and yet different from her own, was "consistent with [Ms. Raymer's] observations of [Plaintiff].... [in that Ms. Raymer had] observed different handwriting ... [and] drawing styles within [Plaintiff] which [Ms. Raymer] can now associate with [Plaintiff's] different and particular personalities." (*Id.* at 4 and 5, ¶ 11.) Ms. Raymer further states that because of Plaintiff's "psychiatric disturbance ... [Plaintiff] was unable to remember the sexual abuse by her father until on or about March 16, 1987, when in the course of therapy ... she was able to trust another individual enough to allow suppressed memories and personalities or personality fragments to surface." (*Id.* at 4, ¶ 10.)

## Discussion

Currently before us is Defendants' motion for summary judgment. Defendants request that we find Plaintiff's complaint, which was originally filed on March 16, 1988, time barred. We must first address what law should be applied to determine this question. In diversity suits, a federal court "applies the substantive law of the forum in which it sits, including that forum's choice-of-law rules ... and its statutes of limitation...." *Anabaldi v. Sunbeam Corp.*, 651 F.Supp. 1343, 1344 (N.D. Ill.1987) (citations omitted). Illinois courts generally "apply Illinois statutes of limitation to common law causes of action arising in other states, even when those causes of action are governed by foreign law." *Anabaldi*, 651 F.Supp. at 1345 (citations omitted).

In *Anabaldi*, the court found that the general Illinois statute of limitations for personal injury actions did fall within this general rule. *Anabaldi*, 651 F.Supp. at 1345. This court also found, however, that the Illinois strict liability statute was not covered by this general rule "because it is a substantive rule extinguishing a cause of action upon the lapse of a given period of time—regardless of whether the cause of action ever accrued." *Anabaldi*, 651 F.Supp. at 1345, *quoting Thornton v. Mono Manufacturing Co.*, 99 Ill.App.3d 722, 726, 54 Ill.Dec. 657, 425 N.E.2d 522 (2d Dist.1981). To determine whether an Illinois statute of limitations applies, Illinois looks to whether the statute of limitations is substantive or procedural.

Based on *Anabaldi*, the parties assumed that Illinois would apply its discovery rule, which is critical to the determination of Defendants' motion, despite the fact that the sexual assaults at issue in this case apparently occurred in Ohio and Indiana. (Amended Complaint, ¶ 5.) Because the parties have not addressed this issue, we express no opinion on that issue and assume, as did the parties, that Illinois would apply not only its own statute of limitations, but also Illinois' discovery rule to this case.

In order to prevail on its summary judgment motion, the Defendants must demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). At this stage, we do not weigh evidence or determine the truth of asserted matters. We simply determine whether there is a genuine issue for trial, i.e., "whether a proper jury question was presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Defendants claim that Illinois' two-year personal injury statute of limitations applies to this case.[2] Defendants concede that the Illinois tolling statute for minors

---

1. We assume the "2" in this paragraph is a typographical error since the second letter was dated August 24, 1984.

2. Section 13–202 of the Illinois Code of Civil Procedure provides that "[a]ctions for damages for an injury to the person ... or for seduction ... shall be commenced within two (2) years next after the cause of action accrued...." Ill. Rev.Stat. ch. 110, § 13–202 (1987).

could be utilized by Plaintiff.[3] Defendants assert, however, that Plaintiff's cause of action is clearly time barred since it was brought in 1988 when Plaintiff was over 30 years of age. Plaintiff argues that the discovery rule should be applied in this case to toll the beginning of the statute of limitation period until Plaintiff knew she was injured. The discovery rule is a judicially created device under which the statute of limitations commences "when the Plaintiff knew or should have known that he was injured." *Lincoln–Way Community v. Village of Frankfort*, 51 Ill.App.3d 602, 9 Ill.Dec. 884, 889–90, 367 N.E.2d 318, 323–24 (3d Dist.1977).

Illinois courts have not as yet addressed the issue of whether the discovery rule should apply to toll the statute of limitations beyond the two-year statutory toll period for minors so as to allow adults to bring claims of incest against their abusers. In fact, this is a relatively new phenomenon and few courts have addressed the issue directly. The cases which have been brought to date have fallen into two categories: (1) those where the Plaintiff claimed she knew about the sexual assaults at or before majority, but that she was unaware that other physical and psychological problems were caused by the prior sexual abuse; and (2) cases such as this one, where the Plaintiff claims due to the trauma of the experience she had no recollection or knowledge of the sexual abuse until shortly before she filed suit.

Courts in California and Montana have decided that the discovery rule does not apply to type 1 cases where the Plaintiff was aware of the sexual abuse but unaware of the causal connection between the sexual abuse and her physical/psychological problems. These same courts, however, expressly reserved the issue of whether or not they would apply the discovery rule in type 2 cases where the Plaintiff claimed she had repressed the sexual abuse from her consciousness. *See De-Rose v. Carswell*, 242 Cal.Rptr. 368, 196 Cal.App.3d 1011 (6th Dist.1987); and *E.W. and D.W. v. D.C.H.*, 754 P.2d 817 (Mont. 1988).

Although the Washington courts had decided that the discovery rule does not apply to type 1 or type 2 cases. *Tyson v. Tyson*, 107 Wash.2d 72, 727 P.2d 226 (1986),[4] this ruling was superseded by statute[5] as stated in *North Coast Air Services, Ltd. v. Grumman Corp.*, 111 Wash.2d 315, 759 P.2d 405 (1988). In *Tyson*, the Washington Supreme Court held "that the discovery rule [did] not apply to an intentional tort claim where the plaintiff has blocked the incident from her conscious memory during the period of the statute of limitations." *Tyson*, 727 P.2d 226, 230. Although *Tyson* has been superseded by statute, we will look at the opinion as the different viewpoints expressed by the majority and dissent are thorough and address the multiple issues raised in type 2 cases.

In *Tyson*, the court stated that "[t]he discovery rule should be adopted only when the risk of stale claims is outweighed by the unfairness of precluding justified causes of action." *Tyson*, 727 P.2d 226, 228. The *Tyson* court refused to apply the discovery rule in the incest context because there was "no empirical, verifiable evidence ... of the occurrences and resulting harm which plaintiff alleges. Her claim rests on

---

**3.** Illinois Code of Civil Procedure Section 13–211 provides that: "[i]f the person entitled to bring an action specified in Sections 13–201 through 13–210 of this Act, at the time the cause of action accrued, is under the age of 18 years, or under legal disability or imprisoned on a criminal charge, he or she may bring the action within 2 years after the disability is removed." Ill.Rev.Stat. ch. 110, § 13–211 (1982).

**4.** *Raymond v. Ingram*, 47 Wash.App. 781, 737 P.2d 314 (1987); and *Kaiser v. Milliman*, 50 Wash.App. 235, 747 P.2d 1130 (1988).

**5.** Washington's current statute of limitations on sexual abuse or exploitation of a child now states that "all claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within three years of the act alleged to have caused the injury or condition, or three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act, whichever expires later." Wash.Rev.Code ch. 144, S.S.B. No. 6305, amending RCW 4.16.350 and adding a new section to RCW 4.16 RCW (1988).

a subjective assertion that wrongful acts occurred and that injuries resulted.... [T]hese allegations.... are based on plaintiff's alleged recollection of a memory long buried in the unconscious which she asserts was triggered by psychological therapy." *Tyson*, 727 P.2d 226, 229. The court seemed particularly cocerned over the staleness of the claim and the fact that "[p]sychology and psychiatry are imprecise disciplines." *Tyson*, 727 P.2d 226, 229.

The dissent argued that prior Washington cases about the discovery rule had centered on "[f]undamental fairness, not availability of objective evidence...." *Tyson*, 727 P.2d 226, 231. The dissent finds the majority's willingness to foreclose these types of claims because of the unreliability of mental health professionals "untenable.... because expert testimony.... is merely an aid to the trier of fact and may be accepted or rejected by the jury.... [and because] the majority based its assertion of the questionable value of mental health professionals on a single law review article. *See* Wesson, *Historical Truth, Narrative Truth and Expert Testimony*, 60 Wash.L.Rev. 331 (1985)." *Tyson*, 727 P.2d 226, 233.

The dissent would apply the discovery rule in this context because incest is a widespread problem, occurring primarily within the family which often results in the victim blocking out the experience in order to maintain her sanity. *Tyson*, 727 P.2d 226, 234. The dissent also stresses that "[t]he purpose behind extending the discovery rule to adult survivors of childhood sexual abuse is not to provide a guaranteed remedy to such plaintiffs. The purpose is to provide an *opportunity* for an adult who claims to have been sexually abused as a child to prove not only that she was abused and that the defendant was her abuser, but that her suffering was such that she did not and could not reasonably have discovered all the elements of her cause of action at an earlier time." *Tyson*, 727 P.2d 226, 237 (emphasis in original).

The only other state to have addressed this issue is Wisconsin. In Wisconsin, the discovery rule is applied in all tort actions.

*Hammer v. Hammer*, 142 Wis.2d 257, 418 N.W.2d 23, 25 (1987), *rev. denied*, 144 Wis. 2d 953, 428 N.W.2d 552 (1988). In *Hammer*, the court held "as a matter of law, that a cause of action for incestuous abuse will not accrue until the victim discovers, or in the exercise of reasonable diligence should have discovered, the fact and cause of the injury." *Hammer*, 418 N.W.2d 23, 26. In reaching this result, the court balanced plaintiff's and defendant's interests and decided that " 'the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions.' " *Hammer*, 418 N.W.2d 23, 27.

In *Hammer*, the plaintiff had reported the sexual abuse to her mother when she was fifteen. *Hammer*, 418 N.W.2d, 23, 24. Despite this fact, the court declined to "decide the factual question of when [the plaintiff] discovered or should have discovered her injuries and their cause." *Hammer*, 418 N.W.2d 23, 27. By including both the discovery of injury *and the discovery of cause* component in their holding, this court appears to have determined that the discovery rule applies in both type 1 and type 2 cases.

The "underlying purpose of statutes of limitations, ... is to 'require the prosecution of a right of action within a reasonable time to prevent the loss or impairment of available evidence and to discourage delay in the bringing of claims.' " *Nolan v. Johns–Manville Asbestos*, 85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864 (1981), *quoting Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill.2d 129, 132, 334 N.E.2d 160 (1975). The literal application of a statute of limitations, however, "takes no cognizance of the situation in which the plaintiff is unable to discover, regardless of his diligence, that he has been injured until after the limitations period has passed and suit is forever barred. In order to mitigate this harshness, the courts have by judicial interpretation formulated the so-called discovery rule." *Lincoln–Way Community v. Village of Frankfort*, 51 Ill.App.3d 602, 9 Ill.Dec. 884, 889, 367 N.E.2d 318, 323 (3d Dist.1977).

The Illinois Supreme Court first utilized a discovery rule in *Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656 (1969) (inaccurate survey results in encroachment being undiscovered during statute of limitations period). Since that time, Illinois has utilized the rule in a number of contexts. *See Nolan v. Johns–Manville Asbestos*, 85 Ill. 2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864 (1981) (personal injury claim due to asbestos); *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 58 Ill.Dec. 725, 430 N.E.2d 976 (1981) (fraud and tortious misconduct in leaky roof claim); *Fure v. Sherman Hospital*, 64 Ill.App.3d 259, 21 Ill.Dec. 50, 380 N.E.2d 1376 (2d Dist.1978) (wrongful death); *Witherell v. Weimer*, 85 Ill.2d 146, 52 Ill. Dec. 6, 421 N.E.2d 869 (1981) (products liability and medical malpractice); and *Tucek v. Grant*, 129 Ill.App.3d 236, 84 Ill.Dec. 603, 472 N.E.2d 563 (2d Dist.1984) (legal malpractice).

Illinois has also refused to apply the discovery rule to a suit based on criminal conversation, a disfavored action because it had been abused (e.g., used for blackmail), and because "the difficulties of establishing the alleged adultery increase substantially over the passage of time." *In re Marriage of Wanic*, 112 Ill.App.3d 740, 68 Ill.Dec. 419, 445 N.E.2d 1272 (1st Dist. 1983). Illinois has also refused to apply the discovery rule when it was the identity of the proper defendant that was at issue. *Guebard v. Jabaay*, 65 Ill.App.3d 255, 21 Ill.Dec. 620, 381 N.E.2d 1164 (2d Dist.1978).

In determining whether the discovery rule should apply, the Illinois Supreme Court has used a case-by-case approach. *In re Marriage of Wanic*, 112 Ill.App.3d 740, 745, 68 Ill.Dec. 419, 445 N.E.2d 1272. The court "balanc[es] the increase[d] difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows or should have known of the existence of his right to sue." *Rozny v. Marnul*, 43 Ill.2d 54, 70, 250 N.E.2d 656. In Illinois, the "discovery doctrine is ... founded on reason and common sense and has been developed to further justice. It ... should[, however] be invoked sparingly and viewed with caution. It is an exception to the usual rule....

*Fure v. Sherman Hospital*, 21 Ill.Dec. 50, 59, 380 N.E.2d 1376, 1385.

While the Illinois courts do talk of problems of proof being important in this balancing process, *Rozny*, 43 Ill.2d 54, 70, 250 N.E.2d 656, this has not been determinative on the question of application of the discovery rule. In *In re Marriage of Wanic*, 112 Ill.App.3d 740, 68 Ill.Dec. 419, 445 N.E. 2d 1272 (discovery rule does not apply to criminal conversation case) quotd above, the court refused to apply the discovery rule because of proof problems. In an asbestos case, however, the court found that "the instant case is a prime example of where, though the passage of time does create problems of proof, those problems are outweighed by the hardship to the plaintiff who neither knows nor reasonably should know that he is being injured." *Nolan v. Johns–Manville Asbestos*, 85 Ill.2d 161, 168, 52 Ill.Dec. 1, 421 N.E.2d 864 (1981). Also, in a wrongful death case, the court found that it would be a "cruel hoax to deny a widow and 4 minor children an opportunity to test their case on the merits because the widow failed to decipher ... [a] medical term [i.e., Mallary Weiss Syndrom]." *Fure v. Sherman Hospital*, 21 Ill.Dec. 50, 60, 380 N.E.2d 1376, 1386. The *Fure* court also found that the "strictures [of the statutes of limitations] must sometimes be loosened in order to give the substantive law room to develop." *Fure*, 21 Ill.Dec. 50, 59, 380 N.E.2d 1376, 1385.

■ As the Illinois Supreme Court has not addressed the application of the discovery rule to the case of adult incest survivors who have no conscious memory of the sexual abuse until after the statutory minors tolling provision has expired, we have no direct Illinois precedents on which to rely in making this determination. The law in other states is also limited although to date, by statute or case law, states who have addressed the issue do apply the discovery rule at least in type 2 cases. The Illinois courts have applied the discovery rule in numerous contexts utilizing a case-by-case method which seems to take into account equitable considerations as strongly, if not more strongly, than it takes into

account problems of proof. We find that the Illinois courts would allow the discovery rule to be utilized in this situation.

In her affidavit in this case, Plaintiff states that she has no memory of the sexual abuse prior to March 1987. Her therapist's affidavit reiterates this point. In this case, Plaintiff alleges that not only did she not know of the causal connection between the prior sexual abuse and her present physical and mental problems, she had no recollection of the abuse even occurring. Plaintiff here is even more ignorant than the widow for whom the Illinois courts had sympathy in *Fure.* Although the widow in *Fure* was unaware of the causal connection between the doctor's malpractice and her husband's death, she was aware that her husband had died.

Incest is a crime in Illinois. Ill.Rev.Stat. ch. 38, § 12–16(b) (1988). It is also a major social problem. "It has been estimated that as much as one third of the population has experienced some form of child sexual abuse. National Legal Resource Center for Child Advocacy and Protection, *Child Sexual Abuse: Legal Issues and Approaches* (rev. ed. 1981).... Much of the sexual abuse of children occurs within the family. Comment, *Statutes of Limitations in Civil Incest Suits: Preserving the Victim's Remedy,* 7 Harv.Women's L.J. 189 (1984).... [When incest occurs] among family members, it has been estimated that 75 percent [of the cases] involve incest between father and daughter. Coleman, *Incest: A Proper Definition Reveals the Need for a Different Legal Response,* 49 Mo.L.Rev. 251, 251 n. 1 (1984)." *Tyson,* 727 P.2d 226, 234. Given the extent of the problem and the dearth of cases on this subject, we doubt that Illinois would find that these suits have been wrongfully used in the past and are disfavored as they did with respect to criminal conversation suits in *In re Marriage of Wanic.* Furthermore, as in *Fure,* applying the discovery rule in this context will give the substantive law room to develop.

By holding that Illinois would apply the discovery rule to this context, Plaintiff's "cause of action accrues when the plaintiff [knew] or reasonably should [have] know[n] of any injury and also [knew] or reasonably should [have] know[n] that the injury was caused by the wrongful acts of another." *Nolan,* 85 Ill.2d 161, 169, 52 Ill.Dec. 1, 421 N.E.2d 864 (1981). "At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences." *Knox College v. Celotex Corp.,* 88 Ill.2d 407, 416, 58 Ill.Dec. 725, 430 N.E.2d 976. When that point is reached in concrete cases is a question of fact. *Nolan,* 85 Ill.2d 161, 171, 52 Ill.Dec. 1, 421 N.E.2d 864.

### Conclusion

We find that the Illinois courts would apply the discovery rule in this context. The point at which the statute of limitations commences under the discovery rule is a question of fact. Because there is a genuine dispute of fact in this case as to when the Plaintiff knew or should have known of her injury and its wrongful cause, Defendants' motion for summary judgment is denied.